**STATE of Minnesota, Respondent,**

v.

**James Leon FERGUSON, Appellant.**

**No. C3–92–1374.**

Supreme Court of Minnesota.

June 18, 1993.

Allan H. Caplan, Minneapolis, for appellant.

Hubert H. Humphrey III, Atty. Gen., and Michael O. Freeman, Hennepin County Atty. and Donna J. Wolfson, Asst. County Atty., Minneapolis, for respondent.

SIMONETT, Justice.

Defendant-appellant James Ferguson was found guilty of first degree murder and attempted first degree murder in a joint jury trial, wherein co-defendant Archie Braylock, Jr., was also convicted of the same crimes. The jury was given an aiding and abetting instruction. In this case, defendant James Ferguson appeals his convictions, raising issues of the sufficiency of the evidence and of ineffective assistance of counsel. We affirm.

The facts giving rise to this case are set out in our decision in co-defendant Archie Braylock's appeal, *State v. Braylock*, 501 N.W.2d 625 (Minn.1993), also decided today and briefed and argued separately. Consequently, an abbreviated factual recital will suffice here.

The state's evidence at trial was that on the evening of November 11, 1991, defendant James Ferguson walked down a sidewalk in south Minneapolis to a station wagon parked in front of an apartment building. When close to the station wagon, he intentionally and repeatedly fired into the front seat, one shot fatally striking Ray Kennedy, the front seat passenger, in the back of the head, and three shots, closely grouped together, wounding the driver, Tony Jenkins, in his left side. There was evidence that Ferguson's companion, Archie Braylock, fired into the rear seat of the station wagon where two people were sitting without hitting anyone. Ferguson and Braylock, together with a third companion, fled the scene, with Ferguson the last to leave. When Ferguson was arrested some days later, he claimed he had not been present at the shooting; later he changed his story to claim self-defense.

At trial, defendant Ferguson claimed Tony Jenkins, from inside the station wagon, fired at him first, and that he fired back only in self-defense. Other evidence, however, if believed, indicated that Jenkins was unarmed and never shot at Ferguson and Braylock. The jury evidently disbelieved defendant's self-defense story and, instead, determined that Ferguson was an aggressor.

Ferguson argues that he had no motive to shoot Jenkins or Kennedy. Unlike Braylock, there was no evidence that Ferguson had ever threatened Jenkins. Ferguson testified he was simply following along with Braylock, who was hoping to visit his girlfriend at the apartment building—the inference apparently being that, at most, an unexpected, unpremeditated gunfight suddenly flared among street gang members.

The state presented evidence, however, that Braylock and Ferguson were related, Ferguson being Braylock's nephew, and that they both belonged to the same street gang. There was evidence that some months before there had been a shoot-out

at Norma Jean's bar involving, among others, Lonnie Austin, a cousin of Ferguson's as well as a nephew of Braylock's; and that Austin had pled guilty only after Jenkins had made a deal with the state to testify against him.

■ Summarily, then, the jury had evidence that on the evening of November 11 defendant Ferguson was carrying a loaded gun—which, testified Ferguson, he usually carried only when he thought something might happen. The evidence further indicated that Ferguson drove his car to a place near the apartment building and parked it; and that he and Braylock, both armed, walked down the sidewalk towards the apartment where there was reason to believe that Jenkins and Kennedy might be. When Jenkins recognized Ferguson and Braylock, he tried to drive away but his station wagon was boxed in by the other parked cars. At that point, there was evidence that Ferguson, without any discussion, much less provocation, said to Jenkins, "What's up, punk?", and fired his gun through the car window at the two men in the front seat. He apparently continued to fire and to pull the trigger even after his gun was empty, and even after Jenkins said, "[T]hat's enough."

Under our standard of review, we must take the evidence in the light most favorable to the jury's verdict, assuming that the jury believed the state's witnesses and disbelieved contrary evidence. *See, e.g., State v. Moore,* 481 N.W.2d 355, 360 (Minn. 1992). Here the jury could find—as it did—that the shootings were unjustified, intentional and premeditated, and that defendant Ferguson was guilty of first degree murder of Ray Kennedy and of attempted first degree murder of Tony Jenkins.

Alternatively, defendant Ferguson argues that he was denied a fair trial and consequently should have a new trial, because of the ineffectiveness of counsel.

■ The test for ineffective assistance is whether defense counsel's representation "fell below an objective standard of reasonableness" such that there is a reasonable probability that the trial's outcome would have been different. *Strickland v. Washington,* 466 U.S. 668, 689–94, 104 S.Ct. 2052, 2065–68, 80 L.Ed.2d 674 (1984); *Gates v. State,* 398 N.W.2d 558, 561 (Minn. 1987).

At defendant Ferguson's first court appearance, the state moved that Ferguson and Braylock be tried together, citing the commonality of the factual situation and other factors. Ferguson's trial counsel did not oppose the motion (nor did Braylock's attorney), and the trial court thereupon stated, "[T]here appears to be no dispute on this issue, and therefore a joint trial is ordered." When the cases were called for trial, the trial judge expressly asked the defendants separately if they remained agreeable to a joint trial, pointing out to them the possible risk of inconsistent defenses, trial strategies and other objections that might arise. Both defendants remained steadfast for a joint trial.

■ Here, on appeal, defendant Ferguson claims that his trial attorney should have anticipated that a joint trial would have "disastrous" consequences for Ferguson; that it was "inconceivable" any trial attorney would agree to the defendants being tried together; and that the failure to seek and obtain a severance was conduct falling short of the objective standard of reasonable legal assistance. Ferguson discusses two instances of prejudice which he claims flowed from the ill-advised joinder and which, he says, made a difference in the outcome of the trial. First, he claims certain hearsay testimony prejudicial to him was admitted at the trial, but would not have been admissible if he had been tried separately; and, secondly, he contends the joinder resulted in misleading instructions to the jury.

First of all, the defense argument assumes that if Ferguson's counsel had opposed joinder, the state's motion for joinder would have been denied, which may or may not have happened. Presumably, defense counsel and his client considered the advantages and disadvantages of joinder before concurring in the state's motion. Significant, too, is the fact that the trial judge

individually questioned Ferguson about his consent to a joinder, and defendant indicated that he had consulted with his attorney and understood his rights. It would seem that defense counsel, weighing all the various factors, made an objectively reasonable tactical decision not to oppose joinder.

But even if it could be said that joinder was ill-advised, and even assuming the trial judge would have granted severance if requested, we conclude there was no reasonable probability that the outcome for Ferguson would have been different.

Defendant's primary claim of prejudice is that at the joint trial certain hearsay statements of co-defendant Braylock's threats to kill Jenkins and Kennedy were received in evidence, yet these hearsay statements would not have been admissible in a separate trial of defendant Ferguson. Ferguson points out there was no evidence that he had made any threats; and that while the hearsay statements were admissible to show Braylock's premeditation, they were also used against him. He argues, therefore, that if he had been tried separately, premeditation on his part would not have been established. At oral argument, the state abandoned its claim that the hearsay would have been admissible under the conspiracy exception, Minn.R.Evid. 801(d)(2)(E), and it appears there may not have been sufficient evidence of the existence of a conspiracy dating back to 2 weeks before the shooting to permit admission of the threats.

Nevertheless, proof of premeditation does not require weeks or even days of planning. Premeditation need take only "some appreciable time." *State v. Moore,* 481 N.W.2d 355, 360–61 (Minn.1992). Significantly, premeditation in a murder case can be inferred from either the number and location of shots fired into the victim, or even the fact that the killer armed himself with a loaded gun in preparation for the crime. *See, e.g., Bangert v. State,* 282 N.W.2d 540, 544 (Minn.1979); *State v. Neumann,* 262 N.W.2d 426, 430–31 (Minn. 1978); *State v. Alton,* 432 N.W.2d 754, 756–57 (Minn.1988). We conclude that defendant has failed to meet the burden of establishing that he likely would not have

been convicted of first degree murder and attempted first degree murder in a separate trial, even if the Braylock threats were not admitted.

■ Defendant next argues that joinder resulted in misleading and prejudicial instructions to the jury. The trial court instructed the jury orally and also gave the jurors a set of written instructions. In instructing the jury orally, the trial court seemingly treated Ferguson and Braylock at times as one defendant. For first degree murder, for example, the court told the jury that the elements of the offense included:

Second, Defendant caused—Defendants caused the death of Milbert Ray Kennedy.

Third, Defendants acted with premeditation and with the intent to kill * * *. Premeditation means that Defendants considered, planned, prepared for, or determined to commit the act before they committed it. * * * In order to have an intent to kill, Defendant must have acted with the purpose of causing—Defendants must have acted with the purpose of causing the death * * *.

Fourth, Defendants' act took place on or about * * * November 11, 1991 in Hennepin County.

If you find that each of these four elements has been proved beyond a reasonable doubt, Defendants are guilty of murder in the first degree.

The concern here, says defendant Ferguson, is that the jury could have assumed from the foregoing instructions (and similar instructions were given for the other offenses charged) that if the elements of the crime were satisfied as to one defendant, they were satisfied for the other defendant as well. Defendant says the instructions should have repeated each element of each charge for each defendant separately.

Set out by themselves, the quoted instructions do suggest potential prejudice; nevertheless, taking the instructions as a whole and in their complete setting, we do not think in this instance that any prejudicial error occurred. Three times during his oral instructions, the trial judge reminded

the jurors as to the offenses charged that "You must make this determination as to each Defendant." Significantly, defense counsel made no objections to the court's instructions. Furthermore, the written instructions given the jurors referred to "defendant" in the singular. It should also be noted that during its deliberations, the jury asked, "If one party is found guilty of first degree, is the other party automatically found guilty of first degree under liability for crimes of another?" The trial court, after consulting with counsel, responded, "No one is automatically found guilty. Please refer to the liability for crimes of another instruction, page 21 of the jury instructions for the applicable standard." Finally, the case was submitted to the jurors on separate verdict forms for each defendant.

Defendant's theory, it should be remembered, is that he was denied the effective assistance of counsel because counsel failed to seek a trial severance. But if this is the claim, while the joint trial may have been the occasion for the inappropriate reference in the jury instructions to plural defendants, the fact of joinder was no barrier to counsel objecting to the inappropriate reference. If defense counsel thought the jury was being misled by the instructions, counsel was free to object. In short, it would appear the ineffective assistance of counsel argument, which is usually and preferably reserved for post-conviction relief, was employed here to somehow revive a claim of error in the instructions that had not been preserved by a timely trial objection, or, in the alternative, to resuscitate a knowingly waived claim against joinder. *See State v. Bergland,* 294 Minn. 558, 202 N.W.2d 223 (1972) (an express, counseled waiver to a separate trial renders the issue of joinder unappealable). Nevertheless, we have carefully reviewed the record and the issues raised by defendant-appellant and are satisfied that no prejudicial error occurred.

Affirmed.