**James Irving DALE, Petitioner, Appellant,**

v.

**STATE of Minnesota, Respondent.**

**No. C8–94–15.**

Supreme Court of Minnesota.

Aug. 4, 1995.

John M. Stuart, State Public Defender, Cathryn Y. Middlebrook, Asst. Public Defender, Minneapolis, for appellant.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, and Michael O. Freeman, Hennepin County Atty., Gayle C. Hendley–Zappia, Asst. County Atty., Minneapolis, for respondent.

OPINION

PAGE, Justice.

A Hennepin County jury convicted James Irving Dale of attempted first-degree criminal sexual conduct in violation of Minn.Stat. § 609.342, subd. 1(e)(i) (1994) and Minn.Stat. § 609.17 (1994). The trial court sentenced Dale to 52 months' imprisonment. Dale petitioned for postconviction relief seeking to have his conviction reversed or, in the alternative, a new trial. The postconviction court denied the petition and the court of appeals affirmed.

Here, on appeal, Dale argues that: (1) his conviction should be vacated and a new trial ordered because of newly discovered evidence; and (2) his conviction should be reversed because the evidence presented at trial is insufficient to sustain the conviction. By *pro se* brief, Dale also asks this court to examine the issues raised in his *pro se* brief to the court of appeals. We affirm.

The testimony at trial disclosed that Dale and the complainant, Melanie Llewellyn, met at a party in Osseo, Minnesota, on October 18, 1991. Dale and Llewellyn left the party together and spent the remainder of that night, all of the next morning, and the early hours of the next afternoon partying together at various locations in south Minneapolis. According to the state, Dale attempted to rape Llewellyn during the afternoon of October 19 when he directed Llewellyn, who was driving him home, into a dead-end alley. Dale's theory of the case was that Llewellyn fabricated the rape charge in order to get back at him for not giving her more crack cocaine when she wanted it. At trial, Llewellyn denied ever smoking crack cocaine and specifically denied that she or anyone else smoked crack cocaine while she was with Dale. Dale, in contrast, testified that both he and Llewellyn smoked crack cocaine throughout the time they were together, and that the "attempted rape" was nothing more than an argument that began when he refused to give her more.

The jury returned its guilty verdict on January 29, 1992, and Dale was sentenced on February 26, 1992. Nearly one year later, on January 13, 1993, Dale filed a petition for postconviction relief, challenging his conviction and sentence. A hearing on the petition was held September 13, 1993.

Dale supported the petition with the affidavits of two of his friends, Jeanine Hetrick and Stephen Wentling. In their affidavits and testimony, Hetrick and Wentling stated that they were at a party in January 1992 when a woman, whom Wentling identified as Llewellyn, accused a man, whom Hetrick and Wentling did not know, but suspected of being a drug dealer, of "shorting" her. Llewellyn threatened the man, saying that she had put the last guy who had shorted her in jail for a long time. Shortly before the postconviction hearing, Dale provided, as additional support for the petition, police reports indicating that Llewellyn had been arrested on April 21, 1993, for loitering with intent to buy narcotics and for possession of drug paraphernalia. Three days after the postconviction hearing, Dale filed with the court the affidavit of Peter Linwick, who was acquainted with both Dale and Llewellyn. In his affidavit, Linwick stated that in April 1993, when he asked Llewellyn about what had happened between her and Dale, Llewellyn told him that "[Dale] ripped me off, and won't be ripping me or anyone else off again for a long time."

The postconviction court denied the relief requested in Dale's petition, concluding that Llewellyn's alleged statements at the January 1992 party and subsequent arrest did not justify a new trial because the evidence is merely impeaching. The court also concluded that the evidence presented at trial is sufficient to sustain Dale's conviction. The court of appeals affirmed, holding that: (1) the newly discovered evidence does not justify a new trial because it is merely impeaching; (2) the evidence is sufficient to sustain Dale's conviction; (3) Dale was not entitled to jury instructions on the impossibility of attempt and abandonment of criminal intention; and (4) statements by the prosecutor in his closing argument did not constitute misconduct. *Dale v. State,* No. C8–94–15, slip op. at 4, 1994 WL 593909 (Minn.App. November 1, 1994).

■ A petitioner seeking postconviction relief must establish, by a fair preponderance

of the evidence, facts which warrant the requested relief. Minn.Stat. § 590.04, subd. 3 (1994); *Wieland v. State*, 457 N.W.2d 712, 714 (Minn.1990). We review postconviction proceedings to determine whether there is sufficient evidence in the record to sustain the postconviction court's findings. *State v. Rainer*, 502 N.W.2d 784, 787 (Minn.1993).

 Dale's first argument is that he is entitled to a new trial because of the newly discovered evidence contained in the affidavits and testimony of Hetrick and Wentling, in the affidavit of Linwick, and in the police reports. Dale contends that his conviction turned on whether the jury believed his story that Llewellyn was a cocaine user and that the newly discovered evidence established that she lied at trial about her cocaine use.

Generally, in order to obtain a new trial on the ground of newly discovered evidence, the defendant must establish (1) that the evidence was not known to him or his counsel at the time of trial, (2) that his failure to learn of it before trial was not due to a lack of diligence, (3) that the evidence is material (or as we have sometimes said, is not impeaching, cumulative or doubtful), and (4) that the evidence will probably produce either an acquittal at a retrial or a result more favorable to the petitioner.

*Race v. State*, 504 N.W.2d 214, 217 (Minn. 1993) (*Race III*) (quoting *Race v. State*, 417 N.W.2d 264, 266 (Minn.1987) (*Race II*)). Absent an abuse of discretion by the postconviction court, this court will not disturb its decision denying a new trial, where the decision turns on newly discovered evidence. *Wieland*, 457 N.W.2d at 714.

In this case Dale has established that the newly discovered evidence was not known to him or his counsel at the time of trial and that his failure to learn of it before trial was not due to a lack of diligence. The evidence was not known and could not have been discovered before trial because it simply did not exist. Dale has failed, however, to establish that the newly discovered evidence is material.[1]

 Dale's newly discovered evidence is not material because some of the evidence is impeaching, cumulative, and doubtful, and some of the evidence lacks probative value. At the trial, Llewellyn denied using crack cocaine, but at least three defense witnesses, including Dale, testified that Llewellyn had smoked crack during the events leading up to the attempted rape. The newly discovered evidence merely provides further support for Dale's contention, apparently rejected by the jury,[2] that Llewellyn was a crack user. Thus, the newly discovered evidence does no more than impeach Llewellyn's testimony, and is cumulative in light of the testimony given at trial. In addition, much of the new evidence is doubtful. Hetrick and Wentling, who as admitted friends of Dale are subject to bias, were unable to testify with certainty that Llewellyn was using or buying drugs at the January 1992 party or that the man she accused of "shorting" her was a drug dealer. The fact that there was a delay between the filing of the affidavits and the events that they relate—12 months in the case of the Hetrick and Wentling affidavits and 5 months in the case of the Linwick affidavit—also casts doubt on the statements contained in the affidavits. Finally, evidence that Llewellyn may have been using drugs at the January 1992 party and evidence of Llewellyn's arrest on drug charges, which occurred 18 months after the attempted rape, lacks probative value because, even if true, it does nothing to prove that Llewellyn smoked crack cocaine when she was with Dale on October 18 and 19, 1991. More importantly, that evidence does not shed any direct light on what actually occurred between Dale and Llewellyn once he directed her to the dead-end alley.

 Dale's second argument is that he is entitled to have his conviction reversed be-

---

1. Because we conclude that the newly discovered evidence is not material and that Dale is not entitled to a new trial on that basis, we have no occasion to decide whether the newly discovered evidence is likely to produce a more favorable result for Dale at a retrial.

2. When reviewing a criminal conviction, we do not evaluate the credibility of the witnesses who testified at trial. That task belongs solely to the jury. *State v. Pieschke*, 295 N.W.2d 580, 584 (Minn.1980).

cause the evidence presented at trial is insufficient to sustain his conviction for attempted first-degree criminal sexual conduct. Dale contends that: (1) the state was unable to establish two elements of the offense, namely that Llewellyn experienced a reasonable fear of imminent great bodily harm to herself, and that he attempted to engage in sexual penetration with her; (2) Llewellyn's testimony was so incredible that, absent corroboration, it could not form the basis for his conviction; (3) he never engaged in any act amounting to a "substantial step" toward commission of first-degree criminal sexual conduct, as required by Minn.Stat. § 609.17, subd. 1 (1994); (4) it would have been impossible for him to accomplish sexual penetration as required by Minn.Stat. § 609.342, subd. 1(e)(i) (1994) because he could not get an erection while high on crack cocaine; and (5) he abandoned any attempt to commit the crime.

 When considering the sufficiency of the evidence, we view the evidence in the record in the light most favorable to the jury's verdict and assume that the jury believed the state's witnesses and disbelieved contrary evidence. *State v. Braylock*, 501 N.W.2d 625, 628 (Minn.1993). We review the evidence and the legitimate inferences from that evidence to determine whether the evidence was sufficient to permit the jury, giving due regard to the need to overcome the presumption of innocence by proof beyond a reasonable doubt, to conclude that the defendant is guilty of the offense charged. *State v. Moore*, 481 N.W.2d 355, 360 (Minn.1992); *State v. Merrill*, 274 N.W.2d 99, 111 (Minn. 1978). As a general matter, judging the credibility of witnesses is the exclusive function of the jury. *State v. Pieschke*, 295 N.W.2d 580, 584 (Minn.1980); *Merrill*, 274 N.W.2d at 111.

Dale was charged under Minn.Stat. § 609.342, subd. 1(e)(i) (1994), which provides that a person is guilty of first-degree criminal sexual conduct if he "uses force or coercion to accomplish sexual penetration" with another person and causes that person personal injury. In order to find Dale guilty of attempted first-degree criminal sexual conduct, the jury had to find that Dale violated Minn.Stat. § 609.17, which provides in relevant part as follows:

> Subdivision 1. Whoever, with intent to commit a crime, does an act which is a substantial step toward, and more than preparation for, the commission of the crime is guilty of an attempt to commit that crime, and may be punished as provided in subdivision 4.
>
> Subd. 2. An act may be an attempt notwithstanding the circumstances under which it was performed or the means employed to commit the crime intended or the act itself were such that the commission of the crime was not possible, unless such impossibility would have been clearly evident to a person of normal understanding.
>
> Subd. 3. It is a defense to a charge of attempt that the crime was not committed because the accused desisted voluntarily and in good faith and abandoned the intention to commit the crime.

Thus, the evidence, viewed in the light most favorable to the verdict, must support the conclusion that Dale took a substantial step toward: (1) using force or coercion to accomplish sexual penetration with Llewellyn; and (2) causing personal injury to Llewellyn.

There was sufficient evidence produced at trial to support Dale's conviction. There was evidence that Dale placed Llewellyn in a headlock; threatened to kill her unless she had sex with him; told her he had a knife; poked her with some object; forcibly restrained Llewellyn; and ripped the clothes from her upper body. This evidence is sufficient to support the conclusion that Dale took a substantial step toward using force or coercion to accomplish sexual penetration with Llewellyn. In addition, there was evidence that Dale, while forcibly restraining Llewellyn, caused her to suffer abrasions on her neck and knee and a contusion on her lip. Llewellyn's testimony regarding the manner in which these actual injuries were caused provides sufficient support for the jury to have concluded that Dale took a substantial step toward causing personal injury to Llewellyn. Assuming, as we must, that the jury believed the evidence presented by the state and disbelieved the evidence presented by Dale, the evidence presented at trial is suffi-

cient to conclude that Dale is guilty of attempted first-degree criminal sexual conduct.

■ Dale's contention that Llewellyn's testimony was not corroborated and therefore is insufficient to sustain Dale's conviction, is simply wrong. The testimony of a complainant in a prosecution under Minn. Stat. § 609.342 need not be corroborated. Minn.Stat. § 609.347, subd. 1 (1994). Although we have recognized that " 'the absence of corroboration in an individual case' " may require a holding that the evidence at trial was insufficient to sustain the conviction, *see State v. Ani*, 257 N.W.2d 699, 700 (Minn.1977); *State v. Packer*, 295 N.W.2d 266, 267 (Minn.1980), on the facts before us, we conclude that this is not such a case.

■ Finally, Dale's impossibility of attempt and abandonment of criminal intent arguments are not persuasive. Impossibility of attempt is only applicable if the impossibility would have been clearly evident to a person of normal understanding. Minn.Stat. § 609.17, subd. 2 (1994). There is no evidence in this record which suggests that it would have been clearly evident to a person of normal understanding that when Dale used crack, it was impossible for him to get an erection.[3] Likewise, Dale's testimony that he walked away from the scene after throwing Llewellyn to the ground does not justify a finding of abandonment because the jury was free to disbelieve his testimony and believe Llewellyn's.

We conclude that the postconviction court did not abuse its discretion by denying Dale a new trial because the newly discovered evidence is not material. We also conclude that the evidence presented at trial is sufficient to sustain Dale's conviction. We have considered Dale's *pro se* arguments and found no reversible error.

Affirmed.

---

**3.** We note also that inability to achieve an erection would not preclude or make impossible various other methods of sexual penetration.