*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1395**

State of Minnesota,
Respondent,

vs.

William James Nichols,
Appellant

**Filed July 18, 2016
Affirmed
Worke, Judge**

Hennepin County District Court
File No. 27-CR-15-259

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Susan L. Segal, Minneapolis City Attorney, Paula Kruchowski Barrette, Assistant City Attorney, Minneapolis, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, John Donovan, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Reilly, Presiding Judge; Worke, Judge; and Smith, Tracy M., Judge.

## UNPUBLISHED OPINION

**WORKE**, Judge

Appellant argues that the evidence is insufficient to support his conviction for violating a harassment restraining order (HRO). We affirm.

**FACTS**

P.F.-O. owns and operates an automotive-repair garage. P.F.-O. met appellant William James Nichols in the mid-1990s through an organization that previously owned and operated the garage. Nichols worked at the garage for over 20 years. In October 2014, Nichols was served with an HRO that prohibited him from having "[a]ny [direct or indirect] contact with [P.F.-O.] in person, by telephone, or by other means or persons."

On December 3, 2014, Nichols and P.F.-O. attended court-ordered mediation for a separate civil action. Later that day, Nichols called the garage, and D.J., the garage's secretary, answered the phone. D.J. whispered to P.F.-O., "it's Billy." P.F.-O. picked up the phone at her desk and heard Nichols's voice. Nichols stated, "you motherf—s missed court today" and hung up.

Nichols was charged with violating the HRO. At the court trial, D.J. testified that P.F.-O. used the garage's main telephone line and agreed that it is "generally a good way to reach her." The district court found Nichols guilty. This appeal follows.

**D E C I S I O N**

Nichols argues that the evidence is insufficient to support his conviction. When reviewing an insufficient-evidence claim, this court reviews the record in the light most favorable to the verdict. *State v. Webb*, 440 N.W.2d 426, 430 (Minn. 1989). A verdict shall not be disturbed if the fact-finder, acting with due regard for the presumption of innocence and the requirement of proof beyond a reasonable doubt, could reasonably conclude that the defendant was guilty of the charged offense. *Bernhardt v. State*, 684 N.W.2d 465, 476-77 (Minn. 2004). An appellate court "assume[s] that the jury believed

the state's witnesses and disbelieved contrary evidence." *Dale v. State*, 535 N.W.2d 619, 623 (Minn. 1995). A person who violates an HRO that he knows exists is guilty of a misdemeanor. *See* Minn. Stat. § 609.748, subd. 6(b) (2014).

Nichols argues that he did not "directly" contact P.F.-O. because he did not call her private number or attempt to speak with her. We are not persuaded. Nichols spoke to P.F.-O. when he called the garage. Nichols worked at the garage for over 20 years and knew that P.F.-O. operated the garage. Despite having a private telephone line, P.F.-O. often used the main telephone line, which is a "good way" to reach her. A person acts "intentionally" when he "believes that the act . . . , if successful, will cause [a] result." Minn. Stat. § 609.02, subd. 9(3) (2014). Viewing this record in the light most favorable to the verdict, it is reasonable to conclude that Nichols intended to directly contact P.F.-O.

Assuming that he did not make direct contact, Nichols also argues that his actions do not constitute "indirect" contact. When determining whether Nichols violated the HRO, "[t]here is no less significance . . . to the contact simply because it was completed by a third party after being instigated *or initiated* by [Nichols]." *See State v. Egge*, 611 N.W.2d 573, 575 (Minn. App. 2000) (emphasis added), *review denied* (Minn. Aug. 15, 2000). "Initiate" means "[t]o set going by taking the first step; begin." *The American Heritage College Dictionary* 700 (3d ed. 1999). Here, Nichols's actions prompted D.J. to inform P.F.-O. that Nichols called the garage. Therefore, viewing the record in the light most favorable to the verdict, the evidence sufficiently supports Nichols's conviction.

**Affirmed.**

3