**In the Matter of the WELFARE OF; S.M.J., Child.**

No. C3–96–640.

Court of Appeals of Minnesota.

Dec. 3, 1996.

Hubert H. Humphrey III, Attorney General, St. Paul, for Respondent.

Robert M.A. Johnson, Anoka County Attorney, M. Katherine Doty, Assistant County Attorney, Anoka, for Respondent.

John M. Stuart, State Public Defender, Charlann E. Winking, Assistant State Public Defender, Minneapolis, for Appellant.

Considered and decided by LANSING, P.J., and HUSPENI and NORTON, JJ.

## OPINION

LANSING, Judge.

The district court adjudicated S.M.J. delinquent for violation of Minn.Stat. § 609.2231, subd. 4 (1994), assault motivated by racial bias. S.M.J. challenges the adjudication, asserting that the evidence was insufficient to prove that he assaulted the victim "because of" the victim's race, as required by the statute. We affirm.

## FACTS

Anoka County filed a delinquency petition alleging that sixteen-year-old S.M.J. committed an assault motivated by bias in violation of Minn.Stat. § 609.2231, subd. 4. The petition was based on an incident initially reported as a property damage complaint. S.M.J. told the investigating deputy that his truck had been damaged by another boy who lived nearby.

When the deputy interviewed the boy identified by S.M.J., the boy admitted kicking the truck, but said that he did it in retaliation for S.M.J.'s assault on his eight-year-old brother, K.M.K. The deputy then spoke with K.M.K., K.M.K.'s older brother, and K.M.K.'s mother. K.M.K. reported that S.M.J. picked him up by the shirt, choked him, and threw him to the ground. K.M.K.'s older brother testified that K.M.K. told him S.M.J. became annoyed because K.M.K. was making loud noises. K.M.K. told the deputy that in the course of the assault, S.M.J. had called him "nigger" several times. K.M.K.'s mother stated that S.M.J. frequently used this word in reference to her children. K.M.K.'s mother is white; his father is African–American.

At the delinquency hearing, K.M.K. testified that S.M.J. had called him "nigger" fifteen or twenty times before this incident. K.M.K.'s older brother corroborated this statement, testifying that S.M.J. had frequently used the term in referring to him and K.M.K. The brother further testified that on the day of the incident, K.M.K. came home crying and told him that S.M.J. had beaten him and called him "nigger."

S.M.J.'s version of the events is different. S.M.J. acknowledged the assault, but testified that K.M.K provoked him by exposing himself and taunting S.M.J. with sexually explicit remarks. S.M.J. denied using the word "nigger" during the assault.

On the basis of this testimony, the court ruled that the state had proved beyond a reasonable doubt that S.M.J. assaulted K.M.K. because of K.M.K.'s race, a violation of Minn.Stat. § 609.2231, subd. 4. This appeal followed.

## ISSUE

Was the evidence sufficient to sustain S.M.J.'s adjudication for assault in the fourth degree?

**6**

## ANALYSIS

### I

Under Minnesota law a fifth degree, misdemeanor assault is elevated to a fourth degree, gross misdemeanor assault if the state proves that the assault occurred "because of" the victim's or another's "actual or perceived race [or] color." Minn.Stat. § 609.2231, subd. 4.; 10 *Minnesota Practice*, CRIMJIG 13.10.02. S.M.J. does not challenge the constitutionality of the statute, but contends that the evidence is insufficient to prove that the assault occurred "because of" K.M.K.'s race.

In a delinquency adjudication, as in a criminal case, the due process clause of the Fourteenth Amendment to the United States Constitution requires the state to prove beyond a reasonable doubt every fact necessary to constitute the charged crime. *In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 1073, 25 L.Ed.2d 368 (1970). On appeal from a determination that the elements have been proved, an appellate court is limited to ascertaining whether, given the facts and legitimate inferences, a factfinder could reasonably make that determination. *State v. Merrill*, 274 N.W.2d 99, 111 (Minn.1978). We are required to view the record in the light most favorable to the determination and assume that the factfinder believed the testimony supporting the determination and disbelieved any contrary evidence. *State v. Braylock*, 501 N.W.2d 625, 628 (Minn.1993).

K.M.K., who was eight years old at the time of the assault, testified that S.M.J., then sixteen, chased him, grabbed him, tore his shirt, picked him up, flung him around, and threw him to the ground while calling him "nigger." K.M.K., K.M.K.'s brother, and their mother testified that S.M.J. had repeatedly called K.M.K. and his brother "nigger" since S.M.J. had moved to their neighborhood. The investigating deputy testified that on the day of the assault, S.M.J. admitted calling K.M.K. "nigger" during the assault. S.M.J. denied the admission and accused the deputy of lying. The district court found that S.M.J. was not a credible witness.

Judging the credibility of witnesses is the exclusive function of the factfinder, and we review the sufficiency of the evidence taking these facts into account. *See State v. Pieschke*, 295 N.W.2d 580, 584 (Minn.1990).

The First Amendment does not prohibit the evidentiary use of speech to establish the elements of a crime or to prove motive. *Wisconsin v. Mitchell*, 508 U.S. 476, 489, 113 S.Ct. 2194, 2201, 124 L.Ed.2d 436 (1993). Evidence of prior speech is commonly admitted in criminal trials. *Id.* (citing *Haupt v. United States*, 330 U.S. 631, 67 S.Ct. 874, 91 L.Ed. 1145 (1947) (defendant's prior speech was admissible to prove motive for treason)). But the introduction of the prior speech is subject to traditional rules of evidence including relevancy and reliability.

The Minnesota Supreme Court has previously considered whether use of the term "nigger" demonstrates a discriminatory motive:

> We cannot regard use of the term 'nigger' in reference to a black youth as anything but discrimination against that youth based on his race. * * * [W]hen a racial epithet is used to refer to a person of that race, an adverse distinction is implied between that person and other persons not of his race.

*City of Minneapolis v. Richardson*, 307 Minn. 80, 88, 239 N.W.2d 197, 203 (1976). In *Richardson*, the court found that a police officer's use of this racial epithet, coupled with his physical assault of a young African-American boy, constituted discrimination "because of" race in violation of the Minnesota Human Rights Act. *Id. See also Rosenbloom v. Flygare*, 487 N.W.2d 546, 549 (Minn.App.1992) (racial epithets coupled with physical contact show racial animus motivating the physical contact) *rev'd on other grounds*, 501 N.W.2d 597 (Minn.1993).[1]

Minnesota is not unique in using "because of" in its formulation of bias assault; other courts have interpreted the same words in similar statutes to require the state to prove a causal connection between the infliction of

---

1. The United States Supreme Court similarly relied on civil rights legislation and case law that contain the "because of" formulation, to describe the role of motive in Wisconsin's bias assault statute. *Mitchell*, 508 U.S. at 485–87, 113 S.Ct. at 2200.

injury and the assailant's perception of the group to which the victim belongs. *See, e.g., State v. Plowman*, 314 Or. 157, 838 P.2d 558, 561 (1992) (words "because of" in Oregon's bias crime statute require proof of causal connection between crime and assailant's motivation), *cert. denied*, 508 U.S. 974, 113 S.Ct. 2967, 125 L.Ed.2d 666 (1993); *In re M.S.*, 10 Cal.4th 698, 42 Cal.Rptr.2d 355, 367–68, 896 P.2d 1365, 1377 (1995) (words "because of" in context of bias crime statute connote causal link between assailant's conduct and victim's characteristic). By requiring a causal link, the statutes exclude offenses committed by a person who entertains racial or other bias but whose bias is not in substantial part what motivated the offense. *Id.*, 42 Cal.Rptr.2d at 367–68, 896 P.2d at 1377; *Plowman*, 838 P.2d at 563; *see also Mitchell*, 508 U.S. at 487–89, 113 S.Ct. at 2201 (racist speech may be introduced to prove motive for conduct unprotected by First Amendment); *cf. R.A.V. v. St. Paul*, 505 U.S. 377, 391, 112 S.Ct. 2538, 2547, 120 L.Ed.2d 305, 323 (1992) (finding ordinance aimed exclusively at speech to be impermissible, content-based discrimination).

The juvenile court based its findings on testimony from the assault victim, the victim's brother, and the investigating deputy. The deputy testified that S.M.J. told him he had used the racial slur, and both K.M.K. and his older brother testified to S.M.J.'s persistent use of the term over a period of months prior to the assault. S.M.J.'s prior speech, speech during the assault, and the circumstances of the assault itself, provided sufficient evidence of a causal connection between his assault on K.M.K. and K.M.K.'s race to support his adjudication of delinquency under Minn.Stat. § 609.2231, subd. 4.

## DECISION

We affirm the decision of the district court adjudicating S.M.J. delinquent based on a violation of Minn.Stat. § 609.2231, subd. 4. Competent evidence supported the district court's finding that S.M.J. assaulted K.M.K. because of his race.

**Affirmed.**