**Pablo MARTINEZ, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 04–96–00642–CR.**

Court of Appeals of Texas, San Antonio.

July 22, 1998.

H. Todd McCray, San Antonio, for Appellant.

Edward F. Shaughnessy, III, Assistant Criminal District Attorney, San Antonio, for Appellee.

Before STONE, GREEN and ANGELINI, JJ.

**OPINION**

STONE, Justice.

## FACTUAL AND PROCEDURAL BACKGROUND

This appeal arises from Pablo Martinez's punishment enhancement following jury conviction of the third-degree felony offense of serious bodily injury to a child based on reckless conduct.[1] Martinez raises several undetermined issues relative to the enhancement of his punishment range under the Texas Hate Crimes Act.

On the morning of June 20, 1994, Cindy Harris discovered her two-year old son, Johnny Vasquez, lying dead, face down on the top bunk of her children's bunk bed. That afternoon, Assistant Bexar County Medical Examiner, Dr. Jan Garavaglia, conducted an autopsy and ruled the cause of death to be blunt abdominal trauma; however, she was unable to establish the "manner and means" of death. Following two custodial statements by Martinez[2] to police regarding the circumstances surrounding Johnny's death, Dr. Garavaglia ruled the "manner and means" of death to be homicide rather than accident because she could find no plausible explanation for Johnny's injury. Martinez later provided a written statement to police investigators stating that he may have accidentally hurt Johnny on the ladder when he put Johnny to bed on the top bunk.

Martinez was indicted for capital murder under TEX. PENAL CODE ANN. § 19.03(a)(8) for the murder of a child under six years of age. Following the jury's verdict of guilty on the lesser offense of serious bodily injury to a child based on reckless conduct, the trial judge instructed the parties to brief the issue of the applicability of the Texas Hate Crimes Act, particularly TEX. PENAL CODE ANN. § 12.47, for the punishment phase. During the charge conference the following day, the trial judge entered a finding pursuant to the Texas Hate Crimes Act under TEX.CODE CRIM. P. ANN. art. 42.014 that Martinez com-

---

1. Effective September 1, 1994, the offense of serious bodily injury to a child caused by reckless conduct is a second degree felony. TEX. PENAL CODE ANN. §§ 22.04(a)(1), (e) (Vernon 1994).

2. Martinez had been living with Cindy Harris and her children approximately three to five months prior to Johnny's death.

mitted the offense because of bias or prejudice based on sex and race. As authorized by section 12.47 of the Penal Code, the trial judge enhanced the applicable punishment range to that of a second degree felony, and so instructed the jury. The jury assessed punishment at the maximum penalty of 20 years' imprisonment and imposed a $10,000 fine. Martinez appealed only his sentence, raising four points of error.

## ARGUMENT AND AUTHORITIES

### Legal Sufficiency Challenge

In his first point of error, Martinez argues that the evidence is legally insufficient to establish that he intentionally selected Johnny as a victim because of a bias or prejudice, and thus he claims there is no support for the trial judge's enhancement of the applicable punishment range. Martinez argues that there is no evidence from which the court could infer that he committed the crime because he hated Johnny's race or gender. Martinez supports his argument with the contentions that: (1) the State produced no evidence that Martinez had an association with a "hate group;" (2) the State produced no expert testimony that Johnny's fatal injury was motivated by Martinez's prejudice against a "person or group;" (3) the record is devoid of any evidence of Johnny's race or Martinez's race; and (4) the State produced no evidence that Martinez was biased against Johnny's gender. Although the record contains evidence that Martinez referred to Johnny as "little black kid" and "nigger baby," Martinez contends there is no evidence to show that "these epithets accompanied the crime or were specifically directed at Johnny." In addition, Martinez argues there is no evidence of a causal connection between his alleged bias and Johnny's fatal injury and no evidence that he had specific intent to cause injury because of a bias motivation.

The State argues that the record contains sufficient evidence to support the sentence enhancement under the statute based upon the trial court's finding that Martinez selected Johnny as a victim because of a bias or prejudice against a *person;* that *person* being Johnny.

Legal sufficiency review of a punishment enhancement issue for which the prosecution bears the burden of proof is ostensibly conducted under a *Jackson v. Virginia* standard: this Court views the evidence in the light most favorable to the trier of fact's answer and determines whether any rational trier of fact could have found the punishment enhancement issue in question beyond a reasonable doubt. *See Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Barnes v. State,* 876 S.W.2d 316, 322 (Tex.Crim.App.1994). This standard of review applies to both direct and circumstantial evidence cases. *Green v. State,* 840 S.W.2d 394, 401 (Tex.Crim.App.1992). Although faced with conflicting inferences or evidence, this court must presume that the trier of fact resolved any such conflict in favor of the prosecution and must defer to that resolution. *Matchett v. State,* 941 S.W.2d 922, 936 (Tex.Crim.App.1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 2487, 138 L.Ed.2d 994 (1997); *Turro v. State,* 867 S.W.2d 43, 47 (Tex.Crim. App.1993).

Effective September 1, 1993, the Texas Hate Crimes Act authorized enhanced punishment in cases in which the crime was motivated by the offender's bias or prejudice. The Texas Hate Crimes Act is codified in Tex.Code Crim. Proc. Ann. art. 42.014 and Tex. Penal Code Ann. § 12.47. Article 42.014, effective at the time of the offense and applicable to this case, provides that if the court determines during the punishment phase of trial that "the defendant intentionally selected the victim primarily because of the defendant's bias or prejudice against a person or group, the court shall make an affirmative finding of that fact" and enter such finding into the record. Tex.Code Crim. Proc. Ann. art. 42.014 (Vernon Supp. 1993) (amended by act of September 1, 1995, 73 Leg., ch. 318 § 50).[3] Under section 12.47 of the Penal Code effective at the time of the offense and applicable to this case,

[i]f the court makes an affirmative finding under Article 42.014, Code of Criminal Procedure, in the punishment phase of tri-

---

**3.** The amendment substituted "a person or   group" with "a group."

al ... the punishment for the offense is increased to the punishment prescribed for the next highest category of offense.

TEX. PENAL CODE ANN. § 12.47 (Vernon 1994)(amended by act of September 1, 1997, 75 Leg. R.S., ch. 750 § 1).[4]

At the conclusion of the punishment phase of trial, the trial judge entered the following finding:

Well, the jury has found that the Defendant killed this child, caused the death of this child. This child is a male child. The evidence adduced by the Defense has shown relationships with female children not with male children. It's a male child that bared a birthmark and that the Defendant perceived as being of a dark race, or at least accused or called or classified that. So, in looking for a motive of why someone would torment a child for five months, eventually causing the death of that child in the fashion that we have heard in this Court, this Court is of the opinion that this Defendant selected this child in a biased and prejudiced fashion based both on sex and race. Consequently, I'm going to in the judgment, make a 42.014 finding under the Code of Criminal Procedure and apply Section 12.47 of the Penal Code to enhance the punishment which is called for by one degree.

The trial judge's finding does not support the State's contention that the evidence is legally sufficient to support the trial court's enhancement based on Martinez's bias against a person. The trial judge did not make a specific finding, as the State contends, that she enhanced Martinez's punishment based on Martinez's bias or prejudice against a person: that being Johnny. The trial court enhanced punishment based on Martinez's bias against a group: that being "race and sex."

The trial evidence showed that Martinez lived with Cindy Harris and her three children approximately three to five months prior to Johnny's death. The evidence showed that during this time Martinez consistently physically abused Johnny. Harris testified that Martinez expressed to her his dislike for Johnny because of the color of Johnny's skin. Harris testified that Johnny's skin was dark, and he had a dark birthmark over one eye, which Martinez inferred was evidence that Johnny's father was African–American. Harris testified that Martinez abused Johnny because of the color of Johnny's skin. Harris testified that Martinez often scared Johnny and would poke him and scream at him until Johnny cried. Harris testified to numerous specific occurrences of assault and physical abuse by Martinez which caused bruising or other injury to Johnny. Harris and her cousin, Mary Ann Perez, testified that Martinez referred to Johnny as "chinga boy," "nigger baby," or "little black kid." Other witnesses testified to numerous instances of physical abuse; however, none of them identified bias or prejudice as Martinez's motive for the abuse.

During the course of the investigation, Martinez made several statements to police. In one statement, Martinez stated,

Detective Gonzales has asked me if I liked Johnny. I want to say I loved Johnny. I play around with Cindy sometimes and call Johnny a 'nigger baby' because he is so dark. Cindy is so jealous and always accusing me of going to sleep with the neighbors and Cindy's sisters. Then, Cindy will get ugly and say that I would even sleep with my own daughters. To get back at her for that I always talked bad about Johnny, calling him a 'nigger' and saying he probably came from the mailman or even guys out in the apartments. But, I like Johnny, and I've never meant to hurt him at all.

In a later statement to police following his arrest, Martinez stated,

I used to poke Johnny in the eye. Well, not really poke in the eye, but I would flick his eye with my finger like I was flicking a bugger. I always flicked his eye with the birthmark. This birthmark was shameful to me. I would also grab Johnny by the

---

**4.** The amendment substituted "the court" with "the judge or jury, whichever assesses punishment in the case." However, the amended § 12.47 is now inconsistent with the amended article 42.014 because article 42.014 calls for the court to make the bias/prejudice finding, while § 12.47 calls for the judge or jury, whichever assesses punishment, to make such finding.

throat and squeeze. Johnny would just laugh. It tickled him. I also used to flick Johnny's ears and the back of his head. I never hit or kicked Johnny. I never hit or kicked any of Cindy's kids.

In the same written statement to police following his arrest, Martinez stated that the night of Johnny's death, Johnny had vomited in his bed. Martinez stated that he was angry at Cindy for smoking a joint, causing her to be unable to care for Johnny, and he was angry that he had to clean the mess caused by Johnny. When he lifted Johnny to put him back in the bed, Martinez stated he accidently hit Johnny against the ladder so hard that it caused the whole bed to slam against the wall.

At sentencing, Martinez presented evidence from his former girlfriend, Marcelina Galvan. Galvan testified that Martinez was not biased or prejudiced against African–American people because "the majority of [her] nieces and nephews are black, and he has taken care of them. He's babysit them and treated them just as well as he treated mine and his own." Galvan testified that she was surprised that Martinez was accused of being prejudiced and that it seemed like an "impossibility." Martinez also presented testimony from Hope Estrada, a forty year old African–American woman. At one time Martinez dated Estrada's aunt.[5] Estrada testified that Martinez was not biased or prejudiced toward her and was nice to her and her family. The State did not present any evidence during the sentencing phase.

The facts and evidence in this case present several novel and undecided issues relative to the hate-crime punishment enhancement statutes: (1) whether punishment enhancement may be based upon the assailant's perception of the victim's race or color, or whether the victim must actually be of the race that the assailant is biased against; (2) whether the State must prove a causal connection between the crime and the proven bias or prejudice; and (3) whether circumstantial evidence may be used to establish that the crime was committed because of a bias or prejudice.

---

5. Estrada's aunt is not African–American.

*Perceived Race or Color*

 Because Johnny was not of the race that Martinez consistently chided him for being a member of, this court must determine whether the trial court was permitted to find that the defendant selected the victim because of a bias or prejudice against the victim's *perceived* race or color.

Under a clear reading of the statutes, the State was not required to show that Martinez was biased or prejudiced against **Johnny's** race, only that Martinez acted out of a bias or prejudice against "**a person or group.**" The legislative intent of the enhancement statutes, evidenced by legislative drafts of the bill proceeding through the final version, was to allow enhancement of punishment when a person commits an act based on a characteristic the victim is perceived by the actor to possess as a member of a disfavored group. *See* David Todd Smith, *Enhanced Punishment under the Texas Hate Crimes Act: Politics, Panacea, or Pathway to Hell?*, 26 ST. MARY'S L.J. 259, 274–76 (1995). Based on a clear reading of article 42.014 and a study of the legislative intent behind the Texas Hate Crimes Act, we hold that the hate-crime punishment enhancement may be assessed when the assailant acted because of the victim's perceived race or color.

Although Johnny was not African–American, the State presented sufficient evidence through Cindy Harris' testimony from which a rational trier of fact could have found beyond a reasonable doubt that Martinez was biased against African–American people and that Martinez's pattern of abuse against Johnny was because he associated Johnny with the African–American race. Although Martinez presented controverting evidence of bias or prejudice, the evidence viewed in the light most favorable to the court's finding, showed that Martinez was prejudiced against African–Americans and against Johnny because he associated Johnny with this group.

*Causal Connection*

 The enhancement statute specifically requires that the defendant intentionally select the victim "primarily because of the defendant's bias or prejudice." TEX.CODE CRIM.

P. ANN. art. 42.014. The use of the term "because of" in similar statutes has been interpreted by courts in other jurisdictions to require the State to prove a causal link between the crime and the proven bias or prejudice. *See e.g., In re S.M.J.*, 556 N.W.2d 4, 6–7 (Minn.Ct.App.1996); *State v. Plowman*, 314 Or. 157, 838 P.2d 558, 561 (1992); *In re M.S.*, 10 Cal.4th 698, 42 Cal.Rptr.2d 355, 896 P.2d 1365, 1377 (1995). By requiring the State to prove such a causal link, the statutes prevent prosecution of offenses committed by a person who entertains bias or prejudice but whose bias or prejudice was not a primary motivating factor in the offense charged. *See In re S.M.J.*, 556 N.W.2d at 7. Because the term "because of" in the statute connotes a causal link between the infliction of injury and bias motivation, we hold that the State must prove a causal connection between the infliction of injury and the assailant's bias or prejudice to assess punishment enhancement under the hate-crime statutes.

*Circumstantial Evidence*

Because there is no direct evidence that Martinez committed the crime based on bias or prejudice, the next issue to be determined is whether the State may use circumstantial evidence to establish the causal connection between the infliction of the injury and the bias or prejudice. In this case, the State presented extensive evidence of Martinez's consistent physical abuse of Johnny and Martinez's use of racial epithets in reference to Johnny to establish that Martinez committed the crime because of bias or prejudice. The State relied on this evidence of a pattern of abuse based on bias and prejudice to serve as a basis for the punishment enhancement of the adjudicated crime.

In *Sterry v. Texas*, 959 S.W.2d 249, 254–55 (Tex.App.—Dallas 1997, no pet.), the court reviewed the legal sufficiency of the evidence to support a punishment enhancement under section 12.47 and article 42.014. The court held that although circumstantial, the evidence was legally sufficient to support the enhancement, concluding that:

[a]lthough there is no direct evidence that appellant selected McCarty as a victim be-

cause of McCarty's race, the record indicates that appellant (1) initiated the confrontation, (2) used racial slurs before, during, and after the assault, and (3) called people who came to McCarty's aid 'nigger lovers.' "

*Sterry*, 959 S.W.2d at 255. The Court of Appeals of Minnesota held that, under Minnesota's similar punishment enhancement statute, evidence of prior speech was admissible to show a bias or prejudice motive for the adjudicated crime because evidence of prior speech is commonly used to prove the elements of a crime or to prove motive in criminal trials. *See In re S.M.J.*, 556 N.W.2d at 6 (*citing Wisconsin v. Mitchell*, 508 U.S. 476, 489, 113 S.Ct. 2194, 124 L.Ed.2d 436 (1993)). However, the court held that the introduction of such evidence was subject to traditional rules of evidence, including relevancy and reliability. *See In re S.M.J.*, 556 N.W.2d at 6.

We adopt the reasoning of these two courts and hold that the punishment enhancement may be based upon circumstantial evidence of the appellant's bias or prejudice motive, including previous racial epithets directed at the victim. However, the circumstantial evidence must be relevant and reliable to prevent enhancement of punishment for crimes committed by a person who entertains a bias or prejudice, but whose bias was not the primary motivation for the criminal conduct.

While the State presented extensive evidence of Martinez's physical abuse of Johnny, only the evidence that the abuse was based on Martinez's bias or prejudice against African–Americans, presented through Cindy Harris and Mary Ann Perez, is relevant to the punishment enhancement issue. Only the evidence presented through these two witnesses will be reviewed to determine the viability of the trial court's punishment enhancement. The evidence was relevant because it pertained to Martinez's behavior and treatment of Johnny based upon Martinez's disclosed bias and prejudice. The pattern-of-abuse evidence produced by the State was reliable in that it was presented by Johnny's mother, who witnessed the abuse, who discussed the reason for the

abuse with Martinez, and was engaged in intimate relationship with Martinez. The concern for prevention of punishment enhancement for crimes in which an established bias or prejudice was not a primary motivation raises the issue whether evidence of Martinez's on-going course of abusive conduct motivated by bias is evidence of a bias motivation for the crime for which he was convicted. We must now determine whether the trial court may reasonably infer a bias motivation from the on-going pattern of abuse based upon bias, which culminated in the death of this child.

The trial court's finding under article 42.014 was clearly based upon the proven pattern of abuse due to bias or prejudice, not on any eye witness testimony of bias or prejudice expressed during the commission of this particular fatal injury. Although the facts and evidence in both *Sterry* and *S.M.J.* establish bias motivation for the crime through eyewitness testimony, these cases do not require that there be such evidence of displayed bias or prejudice during the commission of the crime. In the instant case there is no eyewitness who could testify that Martinez used racial epithets during the crime, nor do the circumstances of the crime indicate a racially biased motivation; however, a bias motivation may be reasonably inferred from the testimony of Cindy Harris and Mary Ann Perez indicating that Martinez's pattern of abuse was based on bias or prejudice. The State provided evidence that Martinez was biased or prejudiced against African–Americans, and he consistently abused Johnny because he associated Johnny with this ethnic group. This evidence provides a sufficient basis from which the trial court could reasonably conclude that this bias or prejudice was the intentional motivation of the crime for which Martinez was convicted.

While the evidence does not directly show that Martinez acted out of any bias or prejudice at the time he caused the fatal injury to Johnny, such inference may be reasonably drawn from the proven pattern of abuse based on bias or prejudice. The evidence was legally sufficient to establish Martinez's bias or prejudice against the African–American race, and he abused Johnny because he associated Johnny with this group. The pattern-of-abuse evidence was legally sufficient to prove that such bias or prejudice motivated the particular act causing Johnny's fatal injury. Martinez's first point of error is overruled.

**Factual Sufficiency Challenge**

In his second point of error, Martinez argues that the evidence is factually insufficient to support the trial court's finding that Martinez selected the victim based on bias or prejudice. Martinez argues that the jury's finding that he acted recklessly to cause Johnny's death eliminates the possibility that he could have intentionally selected his victim based on a bias or prejudice. Because the jury found that the crime was committed as a result of his reckless act, Martinez contends that a finding by the trial court that he selected Johnny as a victim because of a bias or prejudice is clearly wrong and unjust. Martinez contends that his rebuttal evidence showing that he was not biased against African–Americans, disproved the State's theory that he acted out of a bias or prejudice.

The State argues that the fact that the jury made the determination of guilt based on reckless conduct did not bind the trial court in its decision to enhance punishment during the punishment phase of trial. As an independent trier of fact, the State contends that the trial court was "authorized to find that Martinez acted intentionally, rather than recklessly." The State also contends that this court is "not entitled to intrude on the action of the trial Court [sic], in its role as a finder of fact . . . ."

In reviewing the factual sufficiency of the evidence in a criminal case, this court must examine all of the evidence and "set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust." *Clewis v. State*, 922 S.W.2d 126, 134–35 (Tex.Crim.App.1996). Factual sufficiency review begins with the presumption that the evidence supporting the jury's verdict was legally sufficient. *Id.* Extending *Clewis* to a factual sufficiency challenge on a punishment enhancement, this court reviews all of the evidence pertaining to the punishment enhancement and will set aside the enhancement only if it is so con-

trary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *See id.* (extending standard of review to all points in which the State bears the burden of proof).

Martinez's argument regarding the seemingly conflicting findings of the jury during the trial phase and the trial court during the punishment phase raises another undecided issue regarding hate-crime punishment enhancement: Whether the trial court may make a finding that the defendant intentionally selected the victim based on bias or prejudice when the jury convicted the defendant of committing the underlying crime based on reckless conduct. Though the distinction between the findings is subtle and difficult to distinguish, we hold that the jury's finding of reckless conduct does not preclude a finding by the trial court that the defendant intentionally selected the victim. The jury's intent-finding on the commission of the crime concerns the defendant's intent regarding the commission of his actions. The trial court's intent-finding regarding the enhancement of punishment under the hate-crime statutes concerns the defendant's motivation or reason for selecting the victim. The two findings are separate and distinct and are mandated by statute to be conducted by different triers of fact.

As previously stated, the State presented evidence that Martinez selectively and consistently abused Johnny based upon bias or prejudice, and we held that this evidence of a pattern of abuse can serve as evidence of Martinez's primary motivation for this particular criminal act. Perhaps, absent such bias or prejudice, Martinez would have placed Johnny in the lower bunk bed or requested assistance. The jury's finding based on reckless conduct does not preclude a punishment enhancement based on the trial court's finding that the crime was committed "primarily because of a bias or prejudice." In light of such holding, we must review all of the evidence presented relative to the punishment enhancement to determine if the punishment enhancement is "so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust."

The State produced evidence that Martinez was biased against the African–American race, and he abused Johnny because he associated Johnny with this group. Martinez produced controverting evidence relative to the issue of bias or prejudice against the African–American race. The State produced evidence of Martinez's pattern of abuse of Johnny based on bias or prejudice to show that Martinez's criminal act was based on this bias or prejudice. Martinez presented evidence that his act was reckless due to his known back injury and inability to lift objects above his head. Martinez's presentation of conflicting evidence does not entitle him to a favorable finding on either the existence of bias issue or the issue whether he selected his victim because of bias or prejudice. Our review of all of the evidence presented relative to the punishment enhancement reveals that the punishment enhancement is not "so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust." Martinez's second point of error is overruled.

**Proper Notice of Punishment Enhancement**

Martinez contends that he was deprived of his right to due process because he failed to receive proper notice that a particular finding of fact would occur that could operate to further diminish the character of his liberty interest. Martinez equates his right to notice of a possible punishment enhancement under this statute with the same right in the event the State will seek a deadly-weapon finding at trial or will seek an enhancement based on prior convictions. Like the statute that enhances the degree of the penalties for repeat offenders and that which enhances the character of the penalty upon a finding of use of a deadly weapon, Martinez contends that § 12.47 increases the degree of punishment for the offense committed. Therefore, Martinez contends that he was entitled to notice during the trial phase that the State would seek a finding that the offense was committed because of a bias or prejudice.

The State concedes that Martinez did not receive written notice of its intent to seek such a finding. The State also concedes that this situation is analogous to that in which

the State anticipates a finding that a deadly weapon was used, requiring notice. The State contends, however, that Martinez was not harmed by the lack of written notice.

The State is correct that a harmless-error analysis applies to this situation. In *Cain v. State*, 947 S.W.2d 262, 265 (Tex.Crim.App. 1997), the court held that "no error, whether it relates to jurisdiction, voluntariness of a plea, or any other mandatory requirement, is categorically immune to a harmless-error analysis." The court recognized the exception to this rule for those federal constitutional errors classified "structural" by the United States Supreme Court in *Arizona v. Fulminante*, 499 U.S. 279, 309–10, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991). Under *Arizona*, an error is "structural" only if it affects "[t]he entire conduct of the trial from beginning to end." Obviously, the denial of due process based on lack of notice does not fall within this definition. *See id.*

Under TEX.R.APP. P. 44.2, this court must reverse a judgment of punishment for constitutional error that is subject to harmless error review unless the court determines beyond a reasonable doubt that the error did not contribute to the punishment. Any due process error based on lack of notice that the State would seek a finding on bias or prejudice was harmless and not reversible error. Although the punishment phase commenced the day after Martinez was notified of the possible § 12.47 punishment enhancement, the State did not offer any additional evidence on this point during the punishment phase. Martinez offered testimony from two witnesses, who stated that he had no bias or prejudice against African–Americans. Therefore, this court concludes beyond a reasonable doubt that any constitutional error did not contribute to the punishment.

### Vagueness of Statute

 Martinez argues that the term "person or group" within article 42.014 is unconstitutionally vague because it fails to specifically reference the persons or groups that qualify as victims. Martinez contends that the statute "is so indefinite that it confers unstructured and unlimited discretion on the trier of fact. . . ."

Martinez failed to raise this objection in the trial court. Because Martinez made no specific or timely objection in the trial court, he failed to preserve this point of error for this court's review. *See Curry v. State*, 910 S.W.2d 490, 496 (Tex.Crim.App.1995).

The judgment of the trial court is affirmed.