# NO. 12-07-00136-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *JOHN FOSTER CARTER,*<br>*APPELLANT* | § | *APPEAL FROM THE 241ST* |
| *V.* | § | *JUDICIAL DISTRICT COURT OF* |
| *THE STATE OF TEXAS,*<br>*APPELLEE* | § | *SMITH COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

A jury convicted Appellant John Foster Carter of intoxication manslaughter. The jury made a deadly weapon finding and assessed his punishment at imprisonment for sixteen years. Appellant raises six issues on appeal. We affirm.

### BACKGROUND

Appellant's girlfriend, Johnna Jerger, worked at a biker bar, Fat Boys, near Whitehouse. One day when she was not working, she spent the evening at the bar drinking heavily. Appellant arrived at the bar, and ordered a round of drinks for the house. Jerger, he testified, was drunk. Appellant was in the parking lot at closing time when Jerger staggered out of the bar. He realized Jerger was too drunk to drive so he suggested that she ride home with him on his motorcycle. Appellant then realized that Jerger needed more time to sober up before she could safely ride the motorcycle. After thirty minutes, they both mounted Appellant's motorcycle and started home. At one point on the way, one of Jerger's feet slipped off the peg and momentarily touched the road. Jerger told Appellant to keep going. Appellant testified that as they entered a curve near Appellant's house, he "felt her leg brush [his] right hip and leg, as if she were sliding off again, and her foot stomped on

the ground as [he] was traveling down the road." Appellant testified that at that point he panicked, but he could not recall what action he took. The last thing he remembered was sliding on the left side of his helmet after the motorcycle went down.

The motorcycle slid on its side off the road across the bar ditch and into a telephone pole and fence. When the emergency medical personnel arrived, they found Jerger at the telephone pole and fence dead from head injuries, and the motorcycle in the ditch near the telephone pole. Appellant had been thrown over the fence into the pasture. Appellant was airlifted to East Texas Medical Center in Tyler. A sample of Appellant's blood taken at four o'clock a.m. showed an alcohol serum level of .146.

The speed limit where the accident occurred was fifty miles per hour. Appellant testified he was going forty to forty-five miles per hour immediately before the motorcycle went down. There were no skid marks at the scene, but scratch marks in the pavement showed that the motorcycle was on its side before it left the road.

### LEGAL AND FACTUAL SUFFICIENCY

In his first issue, Appellant contends the evidence is legally insufficient because there is no competent evidence that Appellant's intoxication caused the accident. In his second issue, Appellant maintains the evidence is factually insufficient to sustain the verdict, but instead "reflects an outstanding reasonable hypothesis that [Johnna Jerger's] loss of control caused the accident."

**Standard of Review**

The standard for reviewing a legal sufficiency challenge is whether, viewing the evidence in the light most favorable to the jury's verdict, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. ***Jackson v. Virginia***, 443 U.S. 307, 317-18, 99 S. Ct. 2781, 2788-89, 61 L. Ed. 2d 560 (1979); *see also **Sanders v. State***, 119 S.W.3d 818, 820 (Tex. Crim. App. 2003). In reviewing factual sufficiency, we must ask whether a neutral review of all the evidence, both for and against the finding, demonstrates that the proof of guilt is so obviously weak as to undermine our confidence in the jury's determination, or the proof of guilt, although adequate if taken alone, is greatly outweighed by contrary proof. ***Johnson v. State***, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000); *see also **Watson v. State***, 204 S.W.3d 404, 417 (Tex. Crim. App. 2006).

2

**Applicable Law**

A person commits intoxication manslaughter if he operates a motor vehicle in a public place while intoxicated and by reason of his intoxication causes the death of another by accident or mistake. TEX. PENAL CODE ANN. § 49.08(a) (Vernon Supp. 2007). A person is intoxicated if he does not have the normal use of his mental or physical faculties by reason of the introduction of alcohol into his body or has an alcohol concentration of 0.08 or more. TEX. PENAL CODE ANN. § 49.01(2)(A) (Vernon 2003).

The State must prove that a defendant's intoxication, not just his operation of a vehicle, caused the fatal result. *Daniel v. State*, 577 S.W.2d 231, 233-34 (Tex. Crim. App. 1978); *Glauser v. State*, 66 S.W.3d 307, 313 (Tex. App.–Houston [1st Dist.] 2000, pet. ref'd). A causal connection is established if, under the attendant circumstances, the deadly collision could have been avoided if the defendant had been sober rather than intoxicated. *Long v. State*, 154 Tex. Crim. 587, 593, 229 S.W.2d 366, 369 (1950).

"A person is criminally responsible if the result would not have occurred but for his conduct, operating either alone or concurrently with another cause, unless the concurrent cause was clearly sufficient to produce the result and the conduct of the actor clearly insufficient." TEX. PENAL CODE ANN. § 6.04(a) (Vernon 2003). It is the jury's responsibility to draw reasonable inferences regarding ultimate facts from basic facts. *Lacour v. State*, 8 S.W.3d 670, 671 (Tex. Crim. App. 2000); *see Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789. Circumstantial evidence may be used to establish this causal connection. *Martinez v. State*, 980 S.W.2d 662, 667 (Tex. App.–San Antonio 1998, pet. ref'd).

**Discussion**

Appellant argues the evidence does not establish that his intoxication caused the accident. Both officers who responded to the scene the night of the accident testified that the accident itself and Appellant's loss of control of the motorcycle showed that Appellant's intoxication caused the accident. Appellant condemns the officers' testimony as conclusory and insufficient to establish that Appellant's intoxication caused Jerger's death. Appellant insists his testimony and that of the accident reconstruction specialist who testified for the defense show that the accident was caused by Jerger's slipping off the motorcycle causing him to lose control of the vehicle.

3

The record does not support Appellant's assertion. Appellant testified, "I went down. The cause, I'm not sure." There is no direct evidence that Jerger fell from the motorcycle, although Appellant felt her leg brush his right hip and leg "as if she was sliding off again." He heard her foot as it "stomped on the pavement." Apparently Appellant never felt Jerger release her grip with her arms around his body. The accident reconstruction specialist testified that a passenger shifting her weight would be a contributing factor to Appellant's loss of control but that Appellant's intoxication was also a factor to be considered because intoxication would "impede his judgment [as to] how to handle the event."

The jury was entitled to infer that Appellant's loss of control of his motorcycle and Jerger's death were due in significant part to Appellant's intoxication. The record also contains ample evidence beyond Appellant's loss of control that Appellant's speed was excessive. The severe damage to the motorcycle and the location of Appellant's injured body inside the barbed wire fence indicate that Appellant was going much too fast, a speed the jury could reasonably have attributed to Appellant's lack of judgment because of intoxication.

Thirty minutes before Jerger got on Appellant's motorcycle, she was, according to Appellant, "staggering" and "very drunk." Nothing better demonstrates Appellant's diminished judgment than his fateful decision to disregard Jerger's inebriated condition as well as his own and to invite her to ride behind him on his motorcycle for ten miles through the night down winding roads. The jury would have been justified in concluding that a sober person would not have made such a decision. The evidence is legally and factually sufficient to support the jury's implied finding that Appellant's intoxication caused the accident that resulted in Jerger's death. Appellant's first two issues are overruled.

## CHARGE ERROR

In his third, fourth, and fifth issues, Appellant contends that the trial court erred in overruling his request for certain jury instructions pertaining to causation.

## Applicable Law

When charge error has been properly preserved, reversal is required if the appellant has suffered *some* harm. *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984)(op. on reh'g).

"Some harm" means *any* harm, regardless of degree. ***Arline v. State***, 721 S.W.2d 348, 351 (Tex. Crim. App. 1986). In cases where the evidence shows possible concurrent causes of the same result, the trial court is required to give a statutory instruction on concurrent causes. 43 George E. Dix & Robert O. Dawson, TEXAS PRACTICE: CRIMINAL PRACTICE AND PROCEDURE § 36.46 (2d ed. 2001). This instruction provides that "[a] person is criminally responsible if the result would not have occurred but for his conduct, operating either alone or concurrently with another cause, unless the concurrent cause was clearly sufficient to produce the result and the conduct of the actor clearly insufficient." *See* TEX. PENAL CODE ANN. § 6.04(a).

**Discussion**

In his third issue, Appellant complains that the trial court declined to instruct the jury to acquit Appellant "if there is evidence that, concurrently with the intoxication of the defendant, another cause also operated to cause the accident." The instruction requested by Appellant would have instructed the jury to acquit Appellant if it found that the concurrent cause, Jerger's shifting her weight or slipping, simply contributed in some way to the result. To support his argument, Appellant relies on ***Torres v. State***, 52 S.W.3d 285 (Tex. App.–Corpus Christi 2001, no pet.). In ***Torres***, the appellant complained that the trial court had refused to submit a charge on concurrent cause. ***Id.*** at 286. The Corpus Christi court of appeals found the appellant's complaint groundless because (1) the jury charge contained both an abstract instruction on the law of concurrent causation, and (2) a paragraph "instructing the jury to acquit appellant if there was reasonable doubt that, concurrently with the intoxication of the defendant, another cause also operated to cause the collision in question." ***Id.*** The issue presented was whether a charge on concurrent cause should have been given, not whether the charge quoted was a correct statement of the law or correct under the circumstances. ***Id.*** Therefore, we do not believe ***Torres*** is persuasive authority for the instruction requested by Appellant.

The instruction requested by Appellant conflicts with section 6.04(a), and is at odds with the balance of Texas case law. Submission of the instruction would have ignored penal code section 6.04(a), which in effect provides that a concurrent cause cannot constitute a defense to criminal responsibility "unless the concurrent cause was clearly sufficient to produce the result and the conduct of the actor clearly insufficient." TEX. PENAL CODE ANN. § 6.04(a). In ***Westbrook v. State***, 697 S.W.2d 791 (Tex. App.–Dallas 1985, pet. ref'd), an intoxication manslaughter case, the court considered and rejected an instruction similar to the one requested in this case. The defendant asked

5

the trial court to instruct the jury to acquit if it found that the other driver caused the collision by improperly changing lanes. The Dallas court reasoned that even if the jury found the other driver improperly changed lanes causing the collision, that act would be a concurrent cause of the collision with the defendant's driving while intoxicated at a high rate of speed, and not a defense to the charge of involuntary manslaughter. This conclusion, the court explained, is consistent with section 6.04(a) of the penal code. The court noted that "[u]nder the statute, when an indictment alleges that the defendant, while intoxicated, did 'cause the death' of another person, the term 'cause' must assume the meaning set out in section 6.04, that is, that the defendant's conduct caused the death either alone or concurrently with another cause." *Id.* at 793. In this case, the court gave the proper statutory instruction on concurrent causation. The court did not err in giving the instruction requested by Appellant.

In his fourth issue, Appellant argues that the trial court erred in refusing to submit his requested instruction that if "the collision was the result of her fall from the motorcycle, [defendant] should be acquitted irrespective of his intoxication." This instruction, as requested, suffers from the same flaw as the previous. It differs only in that it specifies the concurrent cause, Jerger's falling from the motorcycle. The trial court's instruction on causation was sufficient. Moreover, if Appellant intended a submission of Jerger's falling from the motorcycle as the sole cause or an alternative cause of the accident, the court still did not err in denying the charge. "The denial of a defendant's requested instruction is not error where the requested instruction is merely an affirmative submission of a defensive issue which merely denies the existence of an essential element of the State's case." *Green v. State*, 566 S.W.2d 578, 584 (Tex. Crim. App. 1978); *see also* *Barnette v. State*, 709 S.W.2d 650, 651-52 (Tex. Crim. App. 1986) (State claimed defendant killed child by placing him in hot water and defendant claimed child turned on the water himself; defendant not entitled to charge on alternate cause).

In his fifth issue, Appellant contends the trial court erred in overruling his request that "the jury be instructed that the death must be the result of the intoxication and evidence submitted to the jury of that thing which [was] a causal connection between the intoxication and the death." The application paragraph of the charge, however, did set forth how it was alleged that Appellant's intoxication operated to cause Jerger's death: (1) by causing him to drive at an unsafe speed and (2) by causing him to lose control of his vehicle. This issue is without merit.

Appellant's third, fourth, and fifth issues are overruled.

6

## DEADLY WEAPON FINDING

In his sixth issue, Appellant complains that the deadly weapon finding was improper although he acknowledges that a finding in an intoxication manslaughter case that a motor vehicle is a deadly weapon has been upheld by the court of criminal appeals. *See Tyra v. State*, 897 S.W.2d 796, 798 (Tex. Crim. App. 1995). Appellant concedes that we are bound by the majority holding in *Tyra*. Appellant's sixth issue is overruled.

## DISPOSITION

The judgment of the trial court is ***affirmed***.


    BILL BASS   
Justice


Opinion delivered June 30, 2008.
*Panel consisted of Worthen, C.J., Hoyle, J., and Bass, Retired Justice, Twelfth Court of Appeals, Tyler, sitting by assignment.*

(DO NOT PUBLISH)