*This opinion is nonprecedential except as provided by*
*Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A23-1322**

State of Minnesota,
Respondent,

vs.

Brady James Robinson,
Appellant.

**Filed June 24, 2024**
**Affirmed**
**Frisch, Judge**

Olmsted County District Court
File No. 55-CR-22-3200

Keith Ellison, Attorney General, St. Paul, Minnesota; and

Mark A. Ostrem, Olmsted County Attorney, James E. Haase, Senior Assistant County Attorney, Rochester, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Richard Schmitz, Assistant Public Defender, St. Paul, Minnesota (for appellant)

        Considered and decided by Smith, Tracy M., Presiding Judge; Bjorkman, Judge; and Frisch, Judge.

**FRISCH**, Judge

Appellant challenges the sufficiency of the evidence in this direct appeal following convictions of second-degree assault with a dangerous weapon, harassment motivated by bias, and harassment within ten years of a qualifying offense. The evidence at trial established that appellant harassed and assaulted a person with a dangerous weapon because of the person's national origin, and we therefore affirm.

## FACTS

On May 18, 2022, respondent State of Minnesota charged appellant Brady James Robinson with second-degree assault with a dangerous weapon and fourth-degree assault motivated by bias. The state subsequently amended the complaint to add charges of harassment motivated by bias and harassment within ten years of a qualifying offense. The case proceeded to trial where the jury heard the following testimony.

G.M.—a Spanish-speaking person from Mexico—testified that at around 11:00 p.m. on May 16, 2022, he went to his cleaning business located in Rochester to pick up supplies. As he was opening the front door to the business, he heard someone yelling from across the street. He continued to open the door, but then he heard the voice get louder "right behind [his] back." The person began to yell at G.M., calling him a "f--king Mexican" and "[s]tupid Mexican," and accused G.M. of "touching" children. G.M. turned around and saw that the person yelling was Robinson. G.M. observed that Robinson was holding a hammer over his shoulder in one hand and a metal bar in the other. Robinson pointed the bar at G.M. while continuing to insult him. Robinson then told G.M. that he

was "going to put that stupid hammer" in G.M.'s head, and Robinson swung the hammer and hit G.M.'s hand. The hammer would have struck G.M. in the neck had G.M. not moved backward. G.M. feared that Robinson was going to kill him. G.M. then asked Robinson to let him get in his truck. Robinson responded, "[G]et out of here you stupid Mexican. If I see you again, I'm going to shoot you." G.M. then drove away.

Robinson also testified. He stated that on the night in question, he noticed that neighbors seemed concerned that something bad was occurring near the building where the cleaning business was located. Later, Robinson noticed a man trying to get inside the building. Robinson believed the building to be abandoned and was concerned that the man was not supposed to be there. Robinson testified that he spoke to the man with a raised voice and acknowledged that his demeanor was "probably pretty aggressive." Robinson admitted to holding a metal pipe, which he swung near G.M., but he denied holding a hammer. Robinson also maintained that he did not utter any racial slurs or racially related terms, and he denied that his conduct was motivated by the fact that G.M. is Mexican. According to Robinson, he approached G.M. only to protect his neighborhood. Robinson also testified that he had five prior felony convictions, including two for violating domestic-assault no-contact orders (DANCOs) in 2017 and 2019.

The jury also heard testimony from Robinson's ex-partner. She testified that she is of Mexican descent and that she had never known Robinson to be racist toward "Mexican, Hispanic, or Latino people."

The jury found Robinson guilty of second-degree assault with a dangerous weapon, harassment motivated by bias, and harassment within ten years of a qualifying offense.

3

The jury acquitted Robinson of fourth-degree assault motivated by bias. The district court convicted Robinson of second-degree assault with a dangerous weapon, harassment motivated by bias, and harassment within ten years of a qualifying offense. It sentenced him on the second-degree assault conviction only, ordering that Robinson serve 44 months in prison.

Robinson appeals.

## DECISION

### I.   The evidence at trial was sufficient to prove that Robinson committed second-degree assault with a dangerous weapon.

Robinson argues that the state failed to prove that he committed second-degree assault with a dangerous weapon. An assault is "an act done with intent to cause fear in another of immediate bodily harm or death" or "the intentional infliction of or the attempt to inflict bodily harm upon another." Minn. Stat. § 609.02, subd. 10 (2020). A dangerous weapon is "any device designed as a weapon and capable of producing death or great bodily harm . . . or other device or instrumentality that, in the manner it is used or intended to be used, is calculated or likely to produce death or great bodily harm." Minn. Stat. § 609.02, subd. 6 (2020). Robinson disputes that the evidence at trial established that the hammer and metal bar became dangerous weapons by virtue of their use or intended use.

In reviewing a challenge to the sufficiency of evidence in support of a conviction, we first determine whether the conviction is based on direct evidence or circumstantial evidence. A conviction may be based on direct evidence, which "is evidence that is based on personal knowledge or observation and that, if true, proves a fact without inference or

presumption." *State v. Harris*, 895 N.W.2d 592, 599 (Minn. 2017) (quotation omitted). If that is the case, then our review is limited to "a painstaking analysis of the record to determine whether the evidence, when viewed in the light most favorable to the conviction, was sufficient to permit the jurors to reach the verdict which they did." *State v. Horst*, 880 N.W.2d 24, 40 (Minn. 2016) (quotation omitted). But if a conviction is based on circumstantial evidence—or "evidence from which the factfinder can infer whether the facts in dispute existed or did not exist," *Harris*, 895 N.W.2d at 599 (quotation omitted), then we apply a two-step analysis, *State v. Silvernail*, 831 N.W.2d 594, 598-99 (Minn. 2013). Under this standard, we must first identify the circumstances proved and then determine "whether the circumstances proved are consistent with guilt and inconsistent with any rational hypothesis except that of guilt." *Id.* (quotations omitted).

Robinson maintains that the state proved his intended use of the hammer and metal bar through circumstantial evidence. While it is true that intent is "generally proved circumstantially," in "rare instance[s]" the state may prove a defendant's intent through direct evidence. *State v. Jones*, 4 N.W.3d 495, 501 (Minn. 2024) (quotation omitted). And the supreme court recently held that a defendant's statement that he was "going to beat [the victim] bloody" while wielding a wooden board over his head was "direct evidence of his intended use of the board." *Id.* at 500-01. The same occurred in this case—the direct evidence at trial established that Robinson told G.M. that he was "going to put that stupid hammer" in G.M.'s head while holding the hammer. We therefore apply the direct-evidence standard.

5

Here, direct evidence establishes beyond a reasonable doubt that Robinson intended to use the hammer in a manner "calculated or likely to produce great bodily harm." Minn. Stat. § 609.02, subd. 6. G.M. testified that Robinson, while wielding the hammer, threatened to use it to strike G.M. in the head. G.M. further testified that Robinson swung the hammer at him, forcing G.M. to move backward to avoid the blow. And the direct evidence establishes that when Robinson swung the hammer, it made contact with G.M. Viewing the evidence in the light most favorable to the guilty verdict, we conclude that the evidence is sufficient for the jury to have concluded that Robinson committed second-degree assault with a dangerous weapon.

## II. The evidence at trial was sufficient to prove that Robinson committed harassment motivated by bias against G.M. based on G.M.'s national origin.

A person is guilty of felony harassment when they commit harassment within the meaning of Minn. Stat. § 609.749, subd. 2 (2020), "because of the victim's or another's actual or perceived race, color, religion, sex, sexual orientation, disability as defined in section 363A.03, age, or national origin." Minn. Stat. § 609.749, subd. 3(a)(1) (2020). Here the state argued that Robinson committed harassment within the meaning of the statute by "directly or indirectly . . . manifest[ing] a purpose or intent to injure the person, property, or rights of another by the commission of an unlawful act," Minn. Stat. § 609.749, subd. 2(c)(1), and that Robinson, intending to intimidate G.M., "place[d] [G.M.] in reasonable fear of substantial bodily harm," *id.*, subd. 2(b)(1).

Robinson contends that the evidence is insufficient to support the conviction because it consists of only G.M.'s testimony, which conflicts with his own.[1] This argument is unpersuasive. When reviewing the sufficiency of the evidence, we are required to "assume that the jury believed the state's witnesses" and disbelieved Robinson. *State v. Pilot*, 595 N.W.2d 511, 519 (Minn. 1999). We must therefore accept G.M.'s account as true. And because "a conviction can rest on the uncorroborated testimony of a single credible witness," *State v. Hill*, 172 N.W.2d 406, 407 (Minn. 1969), G.M.'s testimony is sufficient evidence of the fact that Robinson made racially charged statements.

Moreover, our review of the record satisfies us that the state proved each element supporting Robinson's harassment-motivated-by-bias conviction beyond a reasonable doubt. The same direct evidence that establishes Robinson's guilt of second-degree assault also establishes beyond a reasonable doubt that Robinson manifested an intent to intimidate and injure G.M. *See* Minn. Stat. § 609.749, subd. 2(c)(1), (b). Robinson alerted G.M. as to his intent to hit him in the head with a hammer. And Robinson's statements and actions caused G.M. to fear that Robinson would kill him. *See id.*, subd. 2(b)(1).

The circumstantial evidence also establishes beyond a reasonable doubt that Robinson's harassment was because of G.M.'s race or national origin. Because the state proved Robinson's motivation for the harassment by circumstantial evidence, we first

---

[1] Robinson also asserts that G.M.'s testimony recounting Robinson's race-related statements is inadmissible hearsay. We disagree. Minnesota Rule of Evidence 801(d)(2)(A) exempts from the hearsay definition statements made by a party-declarant and used against the party-declarant at trial. Because Robinson uttered these statements and the statements were introduced as evidence against Robinson at his own trial, the statements are not hearsay.

identify the circumstances proved and then determine whether those circumstances exclude any rational hypothesis except that of guilt. *Silvernail*, 831 N.W.2d at 598-99. Here, the circumstances proved are that Robinson approached G.M. from behind and began accusing him of "touching" children and calling him a "[s]tupid Mexican" and a "f--king Mexican." He then told G.M. "get out of here you stupid Mexican. If I see you again, I'm going to shoot you."

Robinson identifies no reasonable hypothesis of innocence based on these circumstances, and we can conceive of none. A criminal offense is committed "because of" another's race or national origin if there is "a causal connection between the infliction of injury and the assailant's perception of the group to which the victim belongs." *See In re Welfare of S.M.J.*, 556 N.W.2d 4, 6-7 (Minn. App. 1996) (considering "because of" language in the context of an assault motivated by bias under Minn. Stat. § 609.2231, subd. 4 (1994)). And the use of racially charged language during the commission of an offense against another is evidence of that causal connection. *See id.* at 7 (pointing to several pieces of evidence of a causal connection between an assault and the victim's race, including "speech during the assault"). Robinson's repeated use of such language throughout his harassment of G.M. precludes any rational hypothesis that the harassment was not causally connected to what Robinson perceived to be G.M.'s race or national origin.

**III.** **The evidence at trial was sufficient to prove that Robinson committed harassment within ten years of a qualifying offense.**

Robinson also argues that the evidence is insufficient to establish that he committed harassment within ten years of a qualifying offense under Minn. Stat. § 609.749, subd. 4 (2020). To prove Robinson's guilt, the state was required to prove beyond a reasonable doubt that Robinson violated a provision of Minn. Stat. § 609.749, subd. 2, and that he did so within ten years of a qualifying offense. Minn. Stat. § 609.749, subd. 4. As we have already held, the evidence establishes beyond a reasonable doubt that Robinson violated Minn. Stat. § 609.749, subd. 2(c)(1). And Robinson provided direct evidence in the form of testimony at trial that he had been convicted of two qualifying domestic violence-related offenses within the last ten years. Minn. Stat. § 609.02, subd. 16 (2020) (defining qualified domestic violence-related offense as including violation of a DANCO). We therefore affirm all three of Robinson's convictions.

**Affirmed.**