NUMBER 13-04-286-CR


COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG 


 


BODIE LEE JAYNES, Appellant,


v.


THE STATE OF TEXAS, Appellee.

 
 

On appeal from the 24th District Court of Victoria County, Texas.

 


O P I N I O N


Before Justices Yañez, Rodriguez, and Garza


Opinion by Justice Garza


A jury convicted appellant, Bodie Lee Jaynes, of aggravated assault with a deadly
weapon, see Tex. Pen. Code Ann. §§ 22.01(a)(1), 22.02(a)(2) (Vernon 2003), enhanced
with a finding that he committed the offense because of a bias or prejudice (a "hate-crime
finding"). See Tex. Code Crim. Proc. Ann. art. 42.014 (Vernon Supp. 2006); Tex. Pen.
Code Ann. § 12.47 (Vernon 2003). The trial court assessed punishment at twenty years'
imprisonment. By eight issues, appellant contends: (1) he was not provided with a
complete reporter's record; (2) the evidence is legally insufficient to support a hate-crime
finding; (3) the evidence is factually insufficient to support a hate-crime finding; (4) the trial
court erred in admitting evidence of his association with the Aryan Brotherhood and the Ku
Klux Klan along with evidence depicting racial and ethnic prejudice because the State failed
to give reasonable notice of its intent to use the evidence and because the probative value
of the evidence was substantially outweighed by unfair prejudice; (5) he was denied
effective assistance of counsel; (6) the evidence was insufficient to disprove self-defense;
(7) the evidence was insufficient to disprove mutual combat; and (8) the trial court erred in
failing to submit a jury instruction on mutual combat. We affirm. 

I. Factual and Procedural Background


On or about August 9, 2003, Zachary Jones, an African American, accompanied
Amanda Johnson to Fanelli's, a bar in Victoria, Texas. Appellant, who is Anglo, was also
at Fanelli's and was accompanied by two females. At some point during the evening, Jones
overheard appellant and one of his female companions making racist comments. Jones
approached appellant to question the comments; shortly thereafter, appellant and Jones
engaged in an altercation outside of Fanelli's. Testimony of appellant and Jones, along with
the testimony of other witnesses, revealed that appellant used a knife to cut Jones during
the altercation. Testimony also revealed that Jones used his belt during the fight, allegedly
to disarm appellant, and that Jones struck appellant in the head with the belt buckle. 
Appellant, Jones, Amanda Johnson, and other witnesses testified that appellant directed
racial comments to Jones before, during, and after the altercation. Monica Sanchez's
testimony also revealed that appellant called her a "nigger lover" and "dead bitch" after she
informed appellant that the police were on their way. Jones filed a complaint with the
Victoria Police Department. After an investigation, Detective Tom Copeland filed a report
with the district attorney's office naming appellant as the suspect. Appellant was charged
with aggravated assault with a deadly weapon, enhanced by a hate-crime allegation. A jury
found appellant guilty of the offense and found that appellant selected Jones because of
a bias or prejudice against Jones. The trial court sentenced appellant to twenty years'
imprisonment. Appellant filed a motion for directed verdict and a motion for new trial; both
motions were denied. This appeal ensued. 


II. The Record


On June 16, 2005, appellant filed a motion to abate with this Court, complaining
about the completeness and accuracy of the reporter's record. (1)
 Appellant identified ten
separate instances in the reporter's record where the court reporter noted that she was
having trouble transcribing because (1) the proceedings are going "extremely fast with no
intervention from Judge Pat Kelly," (2) "defense attorney and witness are again going
extremely fast and talking over each other with still no intervention from Judge Pat Kelly,"
(3) statements are "Indiscernible," and (4) statements are "Inaudible." Appellant stated he
was concerned about the accuracy of the transcription because he "cannot be sure that all
the testimony was transcribed or that the testimony that was transcribed was accurate." 

On January 19, 2006, this Court granted the motion, abated the appeal, and ordered
the trial court to conduct a hearing to determine whether the reporter's record was complete
and accurate. See Tex. R. App. P. 34.6(e)(3) (setting out the procedure to be followed when
a party challenges the accuracy of the reporter's record after it has been filed in the
appellate court). The trial court held a hearing on March 15, 2006, and found that the
reporter's record was complete and accurate. The trial court entered findings of fact and
a conclusion of law in support of its ruling. 

By his first issue, appellant challenges findings 4, 5, 6, and 8. The complained-of
findings are as follows: (4) "No items sought to be included in the reporter's record have
been lost or destroyed," (5) "No items need be reproduced or substituted into the trial
record," (6) "The text of the reporter's record of the trial accurately discloses what occurred
in the trial court," and (8) "There are no items missing from the record." Appellant also
challenges the trial court's conclusion of law, that "[t]he presentment of exhibits together
with the reporter's record is an accurate and full record of the proceedings in this cause
against the Appellant, Bodie Lee Jaynes." Appellant argues that because the
aforementioned findings of fact are based on factually insufficient evidence, the conclusion
of law based on the factual findings is erroneous. 

We give almost total deference to a trial court's express or implied determination of
historical facts and review de novo the court's application of the law to those facts. State
v. Ross, 32 S.W.3d 853, 856 (Tex. Crim. App. 2000); Guzman v. State, 955 S.W.2d 85, 89
(Tex. Crim. App. 1977); Villarreal v. State, 61 S.W.3d 673, 678 (Tex. App.-Corpus Christi
2001, pet. ref'd).

At the abatement hearing, the court reporter, Linda Rubio Miller, testified that the
record was complete and accurate. She testified that she reviewed each of the ten
complained-of areas and that all testimony was recorded. On cross-examination, Miller
testified that she was able to determine that the testimony that she transcribed was
complete and accurate by listening to the audio tapes of the testimony "over and over." The
only contradicting evidence relied on by appellant is appellant's contention that the trial
transcript belies Miller's testimony and that if Miller can be "incorrect about her recollection
of the law [relating to a reporter's duty to transcribe closing arguments], then she could just
as likely be incorrect about the accuracy of the record. . . ." 

Appellant's contention regarding the completeness of the record depends upon facts
that were resolved by the trial court against appellant's position. After reviewing the record,
we find that the evidence is sufficient to support the trial court's factual rendition. Although
appellant introduced conflicting evidence, the trial court could have found that evidence to
not be credible. See Lamb v. State, 680 S.W.2d 11, 15 (Tex. Crim. App. 1984). Giving
almost total deference to a trial court's resolution of the historical facts, see Guzman, 955
S.W.2d at 89, we conclude the trial court correctly ruled that the text of the reporter's record
of the trial accurately discloses what occurred in the trial court. Appellant's first issue is
overruled. (2) 

III. Legal and Factual Sufficiency


By his second and third issues, appellant contends the evidence is legally and
factually insufficient to support the jury's affirmative finding that he intentionally selected
Jones because of his bias or prejudice against Jones' race. See Tex. Code Crim. Proc.
Ann. art. 42.014; Tex. Pen. Code Ann. § 12.47. (3) Specifically, appellant contends the
evidence established that Jones instigated the fight and that there is therefore no evidence
that he "selected" Jones because of a bias or prejudice. 

The court's legal sufficiency review of a punishment enhancement issue for which
the prosecution bears the burden of proof is to be conducted under a Jackson v. Virginia,
443 U.S. 307, 319 (1979), standard. This Court views the evidence in the light most
favorable to the verdict and determines whether any rational trier of fact could have found
the punishment enhancement issue in question beyond a reasonable doubt. See id.;
Barnes v. State, 876 S.W.2d 316, 322 (Tex. Crim. App. 1994); Martinez v. State, 980
S.W.2d 662, 664 (Tex. App.-San Antonio 1998, pet. ref'd). This standard of review applies
to both direct and circumstantial evidence cases. Green v. State, 840 S.W.2d 394, 401
(Tex. Crim. App. 1992). 

In reviewing the factual sufficiency of the evidence in a criminal case, this Court must
examine all of the evidence and "set aside the verdict only if it is so contrary to the
overwhelming weight of the evidence as to be clearly wrong and unjust." Clewis v. State,
922 S.W.2d 126, 134-35 (Tex. Crim. App. 1996). Factual sufficiency review begins with the
presumption that the evidence supporting the jury's verdict was legally sufficient. Id. 
Extending Clewis to a factual sufficiency challenge on a punishment enhancement, this
Court reviews all of the evidence pertaining to the punishment enhancement and will set
aside the enhancement only if it is so contrary to the overwhelming weight of the evidence
as to be clearly wrong and unjust. See id. (extending standard of review to all points in
which the State bears the burden of proof). In conducting a factual sufficiency review, this
Court must discuss the evidence that appellant contends most undermines the jury's
verdict. See Sims v. State, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003). 

Under either standard, the fact finder is the sole judge of the credibility of the
witnesses and the weight to be given their testimony. See Wesbrook v. State, 29 S.W.3d
103, 111 (Tex. Crim. App. 2000); Johnson v. State, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000). 
We must give deference to the fact finder's decisions about the weight and credibility of
evidence. See Johnson, 23 S.W.3d at 9. Although appellant contests the admissibility of
some of the evidence, we must consider all the evidence in conducting our review, whether
properly or improperly admitted. Moff v. State, 131 S.W.3d 485, 488 (Tex. Crim. App.
2004).

The Texas Hate Crimes Act is codified in article 42.014 of the Texas Code of
Criminal Procedure and section 12.47 of the Texas Penal Code. See Tex. Code Crim.
Proc. Ann. art. 42.014; Tex. Pen. Code Ann. § 12.47. The Hate Crimes Act provides that
in a trial of specified offenses, the judge shall make an affirmative finding of fact and enter
such finding in the judgment of the case if, at the guilt or innocence phase of the trial, the
trier of fact, whether judge or jury, determines beyond a reasonable doubt that the
defendant intentionally selected the person against whom the offense was committed, or
intentionally selected property damaged or affected as a result of the offense, because of
the defendant's bias or prejudice against a group identified by race, color, disability, religion,
national origin or ancestry, age, gender, or sexual preference. Tex. Code Crim. Proc. Ann.
art. 42.014(a). If an affirmative finding is made under the Hate Crimes Act in the trial of an
offense other than a first degree felony or a class A misdemeanor, the punishment for the
offense is increased to the punishment prescribed for the next highest category of offense. 
See id.; Tex. Pen. Code Ann. § 12.47; see also Martinez, 980 S.W.2d at 666 (citing Sterry
v. State, 959 S.W.2d 249, 255 (Tex. App.-Dallas 1997, no pet.)). Punishment
enhancement under the Texas Hate Crimes Act may be based on circumstantial evidence
of the defendant's bias or prejudicial motive, including previous racial epithets directed at
the victim, provided, however, the circumstantial evidence must be relevant and reliable to
prevent enhancement of punishment for crimes committed by a person who entertains a
bias or prejudice, but whose bias was not the primary motivation for the criminal conduct. 
See Martinez, 980 S.W.2d at 667.

In the present case, at the guilt-innocence phase of trial, the jury found that appellant
intentionally selected Jones because of his bias or prejudice against Jones' race. At the
conclusion of the punishment phase of trial, the trial judge entered the following finding: 

Mr. Jaynes, as the Defendant in this case, the Court, based upon the
evidence presented and the verdict of the jury, finds that you are guilty of
aggravated assault with a deadly weapon, and the Court further finds that you
selected the victim because of your bias or prejudice towards the person, to-wit: Zachary Jones, in violation of Article 42.014 of the Texas Code of
Criminal Procedure and Section 12.47 of the Texas Penal Code, which results
in an enhancement of the crime to a First Degree Felony. 


 The enhancement statute specifically requires that the defendant intentionally select
the victim "primarily because of the defendant's bias or prejudice." See Tex. Code Crim.
Proc. Ann. art. 42.014; Martinez, 980 S.W.2d at 666-67. The term "because of" connotes
a causal link. Thus, the State must prove a casual link between the crime and the proven
bias or prejudice. Martinez, 980 S.W.2d at 667 (citations omitted). By requiring the State
to prove a causal link, the statutes prevent prosecution of offenses committed by a person
who entertains bias or prejudice but whose bias or prejudice was not a primary motivating
factor in the offense charged. Id. Accordingly, in the present case, the State had to prove
a causal connection between the infliction of injury and appellant's bias or prejudice to
assess punishment enhancement under the Hate Crimes statutes. See id.; Tex. Code
Crim. Proc. Ann. § 42.014(a); Tex. Pen. Code Ann. § 12.47. 

 Jones testified that the encounter began when he heard one of appellant's female
companions say "[t]hat nigger keeps looking at you." Jones testified he heard appellant say,
in a raised voice, "I'll throw this bottle and hit that nigger in his face." Jones stated that he
walked over to appellant and "reproached" him because "it was disrespectful for him to say
something like that about me and he don't even know me." Jones testified that he asked
appellant what he had said, and appellant responded, "You heard me nigger. I'll hit you in
the face with this bottle." Jones testified that he did not remember why he and appellant
went outside or whose idea it was to go outside. Jones also testified that appellant removed
his shirt when they were outside, revealing a Nazi Swastika tattoo on his stomach. Jones
testified that appellant kept saying, "[y]ou know what I represent. You know what I
represent nigger" and "[n]igger, I'm going to kill you" and kept calling him a "nigger." 

 On cross-examination, Jones reiterated that he heard one of appellant's female
companions say, "[t]hat nigger keeps looking at you" and that he heard appellant state to
one of the women, "I've been around niggers twelve years" and "I'll throw this bottle and hit
that nigger in his face." He testified that although appellant and the women may have been
having a conversation amongst themselves, "they said it about me loud enough to where
I could hear it; so, I went [up to appellant] and I commented on it." Jones testified that he
was the only African American at Fanelli's that evening. He explained that he felt he
needed to go over to appellant and "correct" the comments because appellant disrespected
him. He testified that he went up to appellant in a "rational" manner and did not act
outrageously or make any derogatory comments to appellant. Jones testified that he did
not intend to fight appellant, but only wanted to talk to him. Jones stated that he did not
return to his seat after speaking to appellant because he was upset and he and appellant
both wanted to go outside and fight. Jones adamantly testified that he did not remember
asking appellant to go outside. He testified that appellant stood up and started walking
toward the door and he followed, but managed to walk out ahead of appellant, and
explained he did not know how "but me and him went outside." Jones denied making or
using racial or derogatory terms while fighting with appellant; however, he did admit to
telling appellant, "[f]uck you." 

 Detective Tom Copeland of the Victoria Police Department testified that he spoke to
appellant and informed him that Jones had filed an aggravated assault complaint against
him and that appellant became angry and responded, "[t]hat nigger pissed me off." He
testified that he filed the complaint with the district attorney's office and also obtained a
search warrant for appellant's home. Copeland testified that he and the other officers who
searched the home found items that would lead one to believe that appellant belonged to
a white supremacy organization. Specifically, they found t-shirts with white-supremacist-type slogans on them, pictures, photographs, a German cross, Rebel flag, and order forms
for white-supremacist-type items.

 Monica Sanchez, a manager at Fanelli's who was working on the night of the
incident, testified that she observed the altercation between appellant and Jones when she
returned from her lunch break. She testified that as Jones started to walk away from the
fight appellant kept calling Jones a "nigger," yelling "white pride," and spitting on Jones. She
testified that she told appellant and Jones to leave and told appellant that the police were
on their way. Appellant responded by calling her a "nigger lover" and a "dead bitch." 

 Amanda Johnson, who was at Fanelli's with Jones when the fight took place, testified
that Jones had gone outside to retrieve cigarettes from the car and that when he returned
he told her that appellant said something to him about "that nigger better stop looking at my
girl." She testified that she observed appellant and Jones fighting outside and that appellant
was saying, "come on you nigger." She testified that she saw a Swastika tattoo on
appellant's stomach. On cross-examination, Johnson testified that Jones did not like being
called a "nigger." She also testified that Jones was leading when he and appellant were
going outside. 

 Nicole Borst, the bartender on duty that evening, testified that she was informed by
a customer that two people were fighting. Borst testified she saw a black male and a white
male, whom she identified as appellant and Jones, fighting and that she observed a knife
in appellant's hand and observed appellant waving the knife around threatening Jones. She
testified that she did not observe Jones with anything in his hands. She also testified that
she noticed appellant was calling Jones a "bitch" and "nigger" and that appellant had a
Swastika tattoo on his stomach. 

 Appellant testified that, on the night in question, he and Jones unintentionally
bumped shoulders near the juke box. Jones allegedly told him to "watch it" and appellant
responded, "you watch it nigger." He testified that he kept his eye on Jones as Jones
walked back to where Amanda Johnson was sitting. Appellant testified that Jones came
back up to him and told him, "let's go outside white boy." He testified that he figured Jones
wanted to fight and that he willingly went outside. He testified they got in each other's face,
cussed at each other, and that he pushed Jones' face with his hand. Appellant
acknowledged that he bit Jones and cut him with his pocket knife. Appellant testified that
he realized that calling Jones a "nigger" was insulting and also realized that they got into a
fight because he called Jones a "nigger." However, he explained that he would not have
fought with Jones if Jones had not come over and suggested that they go outside. 
Appellant further testified that he formed his dislike for black people while he was in prison
and that he associated with white supremacists in prison. He testified that he was not a full
member of the white supremacist group, but was a prospect. Appellant also testified that
he lied to Detective Copeland when he told him he did not use derogatory or racial terms. 
Appellant admitted that he called Jones a "nigger" and that he did use both racial and
derogatory terms because he has "certain beliefs and issues with certain black people." On
cross-examination, appellant admitted to owning white-supremacist-type items and testified
that he may have called Sanchez a "nigger lover," yelled out "white power," and spit on
Jones. On re-direct examination, he insisted that he did not select Jones, but that Jones
chose him. 

 Although there is no direct evidence that appellant "selected" Jones as a victim
because of Jones' race, the record indicates that appellant (1) provoked Jones by directing
racial comments, (2) threatened Jones by stating, "[y]ou heard me nigger. I'll hit you in the
face with this bottle," (3) used racial slurs before, during, and after the assault, and (4)
called people who came to Jones' aid "nigger lovers" and "dead bitch." Viewing the
evidence in the light most favorable to the finding, we conclude a rational trier of fact could
have found that appellant's bias or prejudice against African Americans was the primary
motivating factor for his conduct and that he therefore selected Jones as a victim primarily
because of his bias or prejudice against Jones' race. African American. See Martinez, 980
S.W.2d at 667. Accordingly, we find the evidence is legally sufficient to support the jury's
finding of a causal connection between the infliction of injury and appellant's bias or
prejudice.

 Further, considering all of the evidence in a neutral light, we find that the jury was
justified in finding appellant selected Jones. Zuniga, 144 S.W.3d at 484. We must defer
to the jury's determination of the credibility of the witnesses. Johnson, 23 S.W.3d at 7. We
cannot say that the evidence is not factually sufficient because the jury resolved the
conflicting views of the evidence in favor of the State. Cain v. State, 958 S.W.2d 404, 410
(Tex. Crim. App. 1997). Further, the evidence supporting the finding of guilt is not too weak
to support the finding beyond a reasonable doubt. See Zuniga, 144 S.W.3d at 484-85. 
Accordingly, we find that the evidence is factually sufficient to support the jury's finding. 
Appellant's second and third issues are overruled. 

IV. Extraneous Conduct


 In his fourth issue, appellant contends that the trial court erred in admitting evidence
of his association with the Aryan Brotherhood and the Ku Klux Klan along with evidence
depicting racial and ethnic prejudice. We review a trial court's decision to admit evidence
of extraneous offenses under an abuse of discretion standard. Page v. State, 137 S.W.3d
75, 78 (Tex. Crim. App. 2004). 

 In particular, he complains about the admission of the following exhibits offered by
the State: 

 Exhibit 18: A picture of a framed Ku Klux Klan poster with the
saying "Save our land, Join the Klan"


 Exhibit 19: A picture of a page from a catalog selling white-supremacist-type insignias and Nazi slogans


 Exhibit 20: A picture of a Ku Klux Klan t-shirt depicting a hooded Ku
Klux Klan member with the words "The Original Boys in
the Hood"


 Exhibit 23: A picture of a Rebel flag picture frame


 Exhibit 24: A picture of an envelope with a Rebel flag drawn on it


 Exhibit 26: Pictures of pages out of a catalog containing white-supremacist-type insignias and Nazi slogans


 Exhibit 27: A picture of a Rebel flag


 Exhibit 28: A picture of a German cross patch and a Rebel flag
patch


 Appellant contends the trial court erred in admitting the evidence because the State
did not give appellant reasonable notice of its intent to use this evidence as required by rule
404(b) of the rules of evidence. See Tex. R. Evid. 404(b). Rule 404(b) requires the State
to give the defendant, upon timely request of the accused, notice of its intent to use
evidence of defendant's other crimes, wrongs, or acts. See id. Appellant filed a motion
requesting disclosure of 404(b) evidence. The State responded that it intended to use two
prior misdemeanor convictions. However, on the first day of trial, the State provided
appellant with notice that it also intended to use evidence that appellant is a member of the
Aryan Brotherhood and the Ku Klux Klan. Appellant objected to the admission of the
evidence contending that he did not receive timely notice. 

 Appellant has not explained how the status of being a member or being associated
with these groups constitutes "evidence of other crimes, wrongs, or acts." See Tex. R. Evid.
404(b). Appellant's status as a member of the Aryan Brotherhood and the Ku Klux Klan is
not evidence of a crime, wrong, or act as contemplated by rule 404(b). Cf. Pondexter v.
State, 942 S.W.2d 577, 583-84 (Tex. Crim. App. 1996) (record contained evidence of the
violent activities of the gang and of the defendant's approval of and participation in those
activities); see also Merrit v. State, No. 05-96-01619-CR, 1998 Tex. App. LEXIS 4100 (Tex.
App.-Dallas July 9, 1998, no pet.) (not designated for publication) (citing Pondexter and
explaining that the court of criminal appeals has never held that mere gang affiliation,
without any evidence of the character of the gang or of the defendant's actions with the
gang or approval of the gang's illegal activities constitutes evidence of other crimes, wrongs,
or acts and holding that rule 404(b)'s notice requirements did not apply). We conclude that
rule 404(b)'s notice requirements do not apply to this case. Accordingly, we hold that, even
though the State gave notice to appellant of its intent to use the complained-of evidence,
appellant was not entitled to receive notice and thus, the trial court did not err in admitting
the evidence. We overrule appellant's fourth issue as it relates to the untimely notice
complaint. 

 As a sub-argument, appellant contends the trial court erred in admitting the
complained-of evidence under rule 403 because the probative value of the evidence was
substantially outweighed by unfair prejudice. Rule 403 provides that "although relevant,
evidence may be excluded if its probative value is substantially outweighed by the danger
of unfair prejudice." Tex. R. Evid. 403. We review the admission of evidence under an
abuse of discretion standard. Wyatt v. State, 23 S.W.3d 18, 29 (Tex. Crim. App. 2000). 

 On March 29, 2004, the first day of trial, appellant filed a motion in limine seeking to
exclude the complained-of evidence. At the conclusion of the second day of trial, the trial
court, outside the presence of the jury, held what we construe to be a hearing on appellant's
motion in limine. (4) At the hearing, appellant objected to the admission of the complained-of
evidence, contending that the probative value was outweighed by the prejudicial value. See
Tex. R. Evid. 403. The State responded that the exhibits were highly probative in that they
tended to show appellant's biases and prejudices both of which are elements in the case. 
The trial court overruled the objection and admitted the evidence. The exhibits were later
introduced during the testimony of Detective Copeland. Appellant did not re-urge his
objection to the admission of the exhibits under rule 403 grounds; instead, he re-urged his
objection to the admission of the exhibits under rule 404(b) on timely notice grounds. See
Tex. R. Evid. 404(b).

 It is a well-settled principle that to preserve error for review on appeal, a defendant
must object timely, specifically, and receive an adverse ruling at trial. Tex. R. App. P.
33.1(a); Turner v. State, 805 S.W.2d 423, 431 (Tex. Crim. App. 1991). The objecting party
must continue to object each time the objectionable evidence is offered. Fuentes v. State,
991 S.W.2d 267, 273 (Tex. Crim. App. 1999); Ethington v. State, 819 S.W.2d 854, 858-59
(Tex. Crim. App. 1991). A trial court's erroneous admission of evidence will not require
reversal when other such evidence was received without objection, either before or after the
complained-of ruling. Leday v. State, 983 S.W.2d 713, 718 (Tex. Crim. App. 1998). This
rule applies whether the other evidence was introduced by the defendant or the State. Id. 
Further, motions in limine do not preserve error. See Webb v. State, 760 S.W.2d 263, 275
(Tex. Crim. App. 1988). This is true whether the motion is granted or denied. Willis v.
State, 785 S.W.2d 378, 384 (Tex. Crim. App. 1989); Webb, 760 S.W.2d at 275. Appellant
has not properly preserved error because he did not renew his rule 403 objection during
Detective Copeland's testimony regarding the complained-of exhibits. Therefore, we
overrule appellant's fourth issue as it relates to the rule 403 complaint. 

V. Ineffective Assistance of Counsel


 In his fifth issue, appellant claims that his trial counsel was ineffective for failing to
object to the State's indictment. Appellant argues that the indictment is defective because
the enhancement paragraph "failed to allege that [appellant] had a bias or prejudice against
African Americans and that [appellant] selected Jones because Jones was an African-American." (5) We disagree. 

 This Court uses the two-pronged Strickland test to determine whether representation
was so inadequate that it violated a defendant's Sixth Amendment right to counsel. See
Strickland v. Washington, 466 U.S. 668, 684 (1984) (recognizing the Sixth Amendment right
to counsel); Hernandez v. State, 726 S.W.2d 53, 57 (Tex. Crim. App. 1986); Alfano v. State,
780 S.W.2d 494, 495 (Tex. App.-Corpus Christi 1989, no pet.). To establish ineffective
assistance of counsel, appellant must show (1) his attorney's representation fell below an
objective standard of reasonableness, and (2) there is a reasonable probability that, but for
his attorney's errors, the result of the proceeding would have been different. Strickland, 466
U.S. at 687; Hernandez, 726 S.W.2d at 55. Whether this test has been met is to be judged
on appeal by the totality of the representation, not by isolated acts or omissions. Rodriguez
v. State, 899 S.W.2d 658, 665 (Tex. Crim. App. 1995). Isolated failures to object generally
do not constitute error in light of the sufficiency of the overall representation. Johnson v.
State, 691 S.W.2d 619, 627 (Tex. Crim. App. 1984).

 The burden is on appellant to prove ineffective assistance of counsel by a
preponderance of the evidence. Munoz v. State, 24 S.W.3d 427, 434 (Tex. App.-Corpus
Christi 2000, no pet.). Our review of counsel's representation is highly deferential. 
Appellant must overcome the strong presumption that counsel's conduct fell within the wide
range of reasonable professional assistance. See Strickland, 466 U.S. at 689; Munoz, 24
S.W.3d at 434. Also, the acts or omissions that form the basis of appellant's claim of
ineffective assistance must be evidenced by the record. See Thompson v. State, 9 S.W.3d
808, 814 (Tex. Crim. App. 1999). In most cases, a silent record which provides no
explanation for counsel's actions will not overcome the strong presumption of reasonable
assistance. See Mallett v. State, 65 S.W.3d 59, 63 (Tex. Crim. App. 2001); Thompson, 9
S.W.3d at 813-14. 

 The enhancement paragraph in the indictment read as follows: 


And it is further presented in and to said Court that the Defendant intentionally
selected the said ZACHARY JONES as the victim primarily because of the
Defendant's bias or prejudice against the said ZACHARY JONES. 


The indictment stated appellant intentionally selected Jones due to appellant's bias or
prejudice against Jones. The indictment follows, almost verbatim, the Hate Crimes Statute,
but it does limit the recognized group from "race" to a specific individual, Jones, whom
appellant knew to be African American and whose race is explicitly recognized by the
statute. See Tex. Code Crim. Proc. Ann. art. 42.014; Martinez v. State, 980 S.W.2d 662,
668 (Tex. App.-San Antonio 1998, pet. ref'd) (stating "[b]ased on a clear reading of article
42.014 and a study of the legislative intent behind the Texas Hate Crimes Act, we hold that
the hate-crime punishment enhancement may be assessed when the assailant acted
because of the victim's perceived race or color."); see also Carroll v. State, No.
04-05-00150-CR, 2006 Tex. App. LEXIS 4830, at * 9 (Tex. App.-San Antonio June 7, 2006,
no pet.) (not designated for publication) (finding no abuse of discretion in rejecting
defendant's claim that the indictment failed to place defendant on notice of the charge
against him because the indictment stated that defendant intentionally selected the victim
due to defendant's bias and prejudice against a group identified by national origin and
ancestry to which the victim belonged, and the victim's group was explicitly recognized
under the hate crime statute.). Accordingly, we hold the indictment, taken together with
appellant's knowledge of Jones' race, sufficiently alleged appellant had a bias or prejudice
against Jones because of his race. Thus, the indictment is not defective. 

 Given the standard of review for effectiveness of counsel, and our conclusion that
the indictment is not defective, appellant has not met his burden to prove that trial counsel's
representation fell below an objective standard of reasonableness. Other than appellant's
contention that "[i]t was unreasonable for trial counsel not to object . . .." the record does not
support appellant's contention that trial counsel failed to provide effective assistance. 

 Further, appellant did not file a motion for new trial on ineffective assistance of
counsel grounds; thus, the record provides no explanation of the motivation behind
counsel's decision not to object. Because the record is silent, we cannot conclude appellant
has overcome the presumption that counsel's assistance was reasonable. Mallett, 65
S.W.3d at 67. Appellant's fifth issue is overruled. 

VI. Self Defense

 In his sixth issue, appellant contends the evidence is factually insufficient to support
his conviction of aggravated assault with a deadly weapon because the State failed to
disprove that he acted in self-defense. See Tex. Pen. Code Ann. §§ 22.01(a)(1),
22.02(a)(2). In support of his argument, appellant relies on his own testimony that Jones
instigated the fight and argues that because Jones was the aggressor, he was merely
defending himself. We disagree. 

 Self-defense serves as a justification, excluding criminal responsibility, for otherwise
criminal behavior. Tex. Pen. Code Ann. § 9.31 (Vernon 2003). A person is justified in using
deadly force against another when and to the degree he reasonably believes the force is
immediately necessary to protect himself against the other's use or attempted use of
unlawful force, if a reasonable person in the actor's situation would not have retreated, and
when and to the degree that he reasonably believes the deadly force is immediately
necessary to protect himself against the other's use or attempted use of unlawful deadly
force, or to prevent the other's imminent commission of aggravated kidnaping, murder,
sexual assault, aggravated sexual assault, robbery, or aggravated robbery. Tex. Pen. Code
Ann. § 9.32(a) (Vernon 2003).

 When a defendant challenges the factual sufficiency of the rejection of a defense,
the reviewing court reviews all of the evidence in a neutral light and asks whether the
State's evidence taken alone is too weak to support the finding of guilt and whether the
proof of guilt, although adequate if taken alone, is against the great weight and
preponderance of the evidence. Zuliani v. State, 97 S.W.3d 589, 595 (Tex. Crim. App.
2003) (citing Johnson v. State, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000)). In conducting
these reviews, we bear in mind that the fact finder may draw reasonable inferences, is the
sole judge of the weight of the evidence and credibility of the witnesses, and may accept
or reject any or all of the evidence produced by the parties. Swearingen v. State, 101
S.W.3d 89, 97 (Tex. Crim. App. 2003); Johnson v. State, 959 S.W.2d 284, 287 (Tex.
App.-Dallas 1997, pet. ref'd).

 The State is not required to affirmatively produce evidence to refute a defendant's
self-defense claim; it must prove its case beyond a reasonable doubt. See Saxton v. State,
804 S.W.2d 910, 914 (Tex. Crim. App. 1991). Self-defense is an issue of fact to be
determined by the fact finder. See id. at 913. A guilty verdict is an implicit finding rejecting
a defendant's self-defense theory. See id. at 914. In order for the State to prove that
appellant committed aggravated assault with a deadly weapon, it had to prove, beyond a
reasonable doubt, that he used or exhibited a deadly weapon to intentionally, knowingly, or
recklessly cause bodily injury to Jones. Tex. Pen. Code Ann. §§ 22.01(a)(1), 22.02(a)(2). 

 Here, the record contains conflicting evidence regarding the circumstances and
events surrounding the dispute between appellant and Jones. The following evidence,
relevant to appellant's claim of self-defense, was presented to the jury.

 Jones testified that he heard appellant make racial comments and that he
approached appellant to ask him what he had said. Appellant told him, "You heard me
nigger. I'll hit you in the face with this bottle." He testified he did not know why he and
appellant walked outside or whose idea it was to go outside. He testified that as he walked
outside, he looked back and saw appellant pull out a knife. Jones took his shirt off to use
it to try to disarm appellant. Appellant then removed his shirt and proceeded to argue,
curse, and push Jones in the face. Jones then punched appellant. Jones testified that
appellant swung the knife at him and that he backed up but appellant managed to punch
him under his eye. Appellant then jumped at Jones and managed to cut Jones' arm. Jones
then removed his belt, wrapped it around his hand, and began swinging it to try to pull the
knife away from appellant; however, appellant managed to somehow grab the belt away
from Jones. As appellant pulled the belt from Jones, Jones managed to punch appellant,
causing him to drop both the knife and the belt. He testified that they proceeded to fight
"hand to hand" and eventually ended up fighting on the ground. 

 On cross-examination, Jones testified that he did not go over to appellant with the
intention of fighting and that he only wanted to talk. He again stated he did not remember
asking appellant to go outside, but that they both wanted to go outside. Jones testified that
appellant stood up and started walking toward the door and he followed, eventually going
out ahead of appellant. He testified that after he disarmed appellant of the knife and belt,
appellant picked the belt up and swung it at him. Jones testified that the fight ended after
he punched appellant in the face and knocked him to the ground. Jones then got into the
car and left the scene. 

 Appellant testified that Jones came up to him and asked him to go outside. He
testified that he did not retreat from the fight because there was no place to go, "there were
cars parked there, buildings. There was no place to go." On cross-examination, appellant
testified that he cut Jones because Jones swung a belt at him. 

 Monica Sanchez testified that she went up to appellant and Jones and told them to
leave. She said that when she did this, appellant and Jones "kind of stepped apart from
each other; and they were just kind of yelling at each other." She testified that when she
came up to them, Jones told her appellant had stabbed him. She also testified that Jones
started to walk away from the fight but appellant kept yelling, "white pride," calling Jones a
"nigger" and spitting on Jones, causing Jones to turn around. She testified that appellant
had the belt at this point and was swinging it at Jones. Sanchez testified that even as Jones
retreated with Amanda Johnson, appellant kept yelling "white pride." 

 Amanda Johnson and Nicole Borst both testified that appellant held a knife in his
hands and swung the knife at Jones. Johnson testified that appellant and Jones rushed
each other during the confrontation and that appellant said to Jones, "come on you nigger." 
Johnson testified that she saw blood on Jones' arm. Borst testified that while appellant was
swinging the knife at Jones, Jones "was trying to talk but also stepping back so he didn't get
hurt-well, not talking but defending himself while talking." She testified that Jones did not
have anything in his hands at this time, but appellant was holding a knife and threatening
Jones. 

 Although appellant contends he was acting in self-defense, evidence that appellant
produced a knife early in the confrontation; that although Jones used a belt to defend
himself, appellant was able to disarm him; that when Jones attempted to walk away from
the fight, appellant did not retreat, but instead continued to provoke Jones; and that
appellant cut Jones with a knife, undermined his defense. By returning a verdict of guilty,
the jury necessarily resolved any conflicts between the evidence supporting guilt and the
evidence undermining guilt in favor of the State. As the sole judge of the witnesses'
credibility and weight to give the testimony, the jury was free to do so, and we will not
disturb its finding. See Swearingen, 101 S.W.3d at 97; Johnson, 959 S.W.2d at 287. 

 Viewed under the proper standard, we conclude the evidence is factually sufficient
to support the finding of guilt and the rejection of appellant's self-defense claim. See
Zuliani, 97 S.W.3d at 594; see also Gutierrez v. State, 85 S.W.3d 446, 450-51 (Tex.
App.-Austin 2002, pet. ref'd) (holding the jury could reasonably reject defendant's
self-defense claim where defendant admitted stabbing victim and victim was not in
possession of a weapon, had defensive wounds on hands, and stab wounds in his back). 
We overrule appellant's sixth issue. (6)

VII. Mutual Combat

 In his seventh issue, appellant argues the evidence is factually insufficient to support
his conviction because the State failed to disprove his defense of mutual combat. 

 Inherent in appellant's argument is the implied assertion that the jury in this case
rejected appellant's mutual combat defense. However, the jury was never instructed on the
defensive theory of mutual combat and, thus, was never given the opportunity to find
against appellant on the mutual combat issue. Appellant has cited no authority, and we
have found none, authorizing a review of the factual sufficiency of the evidence on an issue
that was not submitted to the jury. Under these circumstances, we conclude a factual
sufficiency review would be improper. We overrule appellant's seventh issue.

VIII. Instruction on Mutual Combat

 By his eighth issue, appellant complains that the trial court erred in failing to include
an instruction on mutual combat. However, the record reflects that appellant's counsel did
not request to include the defensive issue in the court's charge and did not object to the lack
thereof. A trial court has no duty to sua sponte instruct the jury on a defensive issue, even
if raised by the evidence. Posey v. State, 966 S.W.2d 57, 61-64 (Tex. Crim. App. 1998). 
Where the trial court is not requested to include a defensive issue in the court's charge to
the jury and omits the instruction, the defendant cannot complain for the first time on
appeal. Id. A defendant's failure to request an instruction on the defense of mutual
combat, or object to the lack thereof, waives any complaint on appeal. See Kinnamon v.
State, 791 S.W.2d 84, 96 (Tex. Crim. App. 1990), overruled on other grounds by Cook v.
State, 884 S.W.2d 485, 491 (Tex. Crim. App. 1994); Mohammed v. State, 127 S.W.3d 163,
169 (Tex. App.-Houston [1st Dist.] 2004, pet. ref'd). 

 As a sub-argument in his eighth issue, appellant also contends counsel was
ineffective for failing to object to the trial court's jury charge because it did not include an
instruction on the defense of mutual combat. Assuming, without deciding, that appellant
was entitled to a mutual combat jury instruction, the record shows that trial counsel's
strategy included the pursuit of the defense of "self-defense." Trial counsel could
reasonably have concluded that the jury could have found the mutual combat defense less
credible if he proceeded with both mutual combat and self-defense as defense theories,
which the jury could perceive as inconsistent. See Marlow v. State, 886 S.W.2d 314, 317
(Tex. App.-Houston [1st Dist.] 1994, pet. ref'd) (holding trial counsel may reasonably
choose defensive theory of self-defense as only defensive theory, as a matter of trial
strategy, even though other defensive theories were available); cf. Vasquez v. State, 830
S.W.2d 948, 949-51 (Tex. Crim. App. 1992) (finding ineffective assistance of counsel where
counsel failed to request instruction on the only available defense) (emphasis added). 

 Because appellant did not file a motion for new trial on ineffective assistance of
counsel grounds, and because no testimony was elicited concerning counsel's reasons for
not requesting the mutual combat charge, no evidence in the record demonstrates counsel's
reasons for his decision. Accordingly, appellant has not rebutted the presumption that his
trial counsel's decisions were made in the exercise of reasonable professional judgment
and motivated by sound trial strategy. See Mallett, 65 S.W.3d at 67; McFarland v. State,
928 S.W.2d 482, 500 (Tex. Crim. App. 1996). Because we are unable to conclude that
counsel's performance fell below an objective standard, appellant has failed to satisfy the
first prong of Strickland. Mallett, 65 S.W.3d at 67. Accordingly, we overrule appellant's
eighth issue. 

 The judgment of the trial court is affirmed. 



 _________________________

 DORI CONTRERAS GARZA,

 Justice


Publish. 

Tex. R. App. P. 47.2(b).

Opinion delivered and filed 

this the 22nd day of November, 2006.
1. Appellant claimed the reporter's record was incomplete because it did not include (1) two tape recordings
played before the jury and admitted into evidence, and (2) the closing arguments of both the State and
appellant's trial counsel. However, on September 20, 2005, the reporter's record was supplemented with the
omitted items. Accordingly, we will only address appellant's contention as it relates to the accuracy of the
reporter's record. 

2. Because we find that factually sufficient evidence to support the trial court's findings of fact exists, we need
not address appellant's contention that the conclusion of law based thereon is erroneous. See Tex. R. App.
P. 47.1. Nonetheless, whether the record is complete is an issue of fact and not an issue of law. 
3. The jury was instructed, "Do you the Jury find from the evidence beyond a reasonable doubt that the
defendant intentionally selected the person against whom the offense was committed because of the
defendant's bias or prejudice against the said Zachary Jones?"
4. The record reflects that at the conclusion of the second day of trial, appellant's trial counsel renewed his rule
404 objection. The trial court asked, "Which 404 objections to this?" Counsel replied, "The Motion in Limine." 
The trial court then recessed the jury overnight and proceeded to address counsel's motion in limine. 
5. Appellant's challenge to the indictment is based on his contention that the State must set forth in the
indictment every element of a crime or an enhancement that must be proved. He argues that one element
of the "bias" enhancement is that the defendant intentionally selected the person against whom the offense
was committed because of the defendant's prejudice against an identifiable protected group. See Tex. Code
Crim. Proc. Ann. art. 42.014 (Vernon Supp. 2006). 
6. In respect to this issue on appeal, appellant asks this Court to "reverse and render a judgment of acquittal"
or, in the alternative, "reverse and remand for a new trial." Appellant's prayer implies a legal sufficiency
challenge to the jury's finding on this issue; however, appellant's brief and argument focus solely on the factual
sufficiency of the evidence. Accordingly, we will not entertain a legal sufficiency review of the evidence. See
Tex. R. App. P. 38.1(h).